PEOPLE v DAWSON

Docket No. 65415. Submitted November 6, 1985, at Lansing. Decided
September 8, 1986. Leave to appeal applied for.

Robert C. Dawson was convicted of assault with intent to commit
sexual penetration, following a jury trial in the Kalamazoo
Circuit Court. The trial court, Frederic A. Grimm, Jr., J.,
sentenced defendant to probation for five years, with the first
year to be served in jail, and ordered him to pay costs of $700
and restitution in the amount of $50. Defendant appealed,
claiming that the trial court erred in denying his motion to
dismiss based on double jeopardy. An earlier jury trial had
resulted in the grant of defendant's motion for a mistrial
prompted by the manner in which the prosecution questioned
one of its witnesses regarding alleged offers by defendant to
perform fellatio.

The Court of Appeals *held:*

1. As a general rule, both the federal and state guarantees
against being put twice in jeopardy for the same crime do not
bar the retrial of a defendant when his prior trial has been
terminated upon his successful mistrial motion. An exception
to this rule has developed on both the federal and state levels,
however, when the motion was precipitated by prosecutorial or
judicial impropriety or overreaching.

2. Defendant's retrial was not precluded by the double jeop-
ardy clause of the United States Constitution. The prosecutor's
conduct in defendant's first trial was motivated by his willing-
ness to go beyond permissible bounds of questioning at any
expense in order to get certain information before the jury, and
not by any specific intent to provoke a mistrial.

3. The Court of Appeals declined to adopt the federal stan-
dard in deciding whether a defendant's successful mistrial
motion, predicated upon prosecutorial impropriety, will bar
retrial under the double jeopardy clause of the Michigan Con-
stitution. The Court concluded that the subjective federal stan-

REFERENCES

Am Jur 2d, Criminal Law §§ 243 *et seq.*

See the annotations in the Index to Annotations under Double
Jeopardy.

dard placed a near impossible burden upon the defendant of proving the prosecutor's intent to provoke a mistrial and, in some instances, may not provide a defendant with the protection of the double jeopardy bar, where the defendant should be protected.

4. The Court of Appeals adopted a three-part test to be used in determining when prosecutorial impropriety leading to a successful defense mistrial motion will bar retrial, and concluded that, under that standard, defendant's retrial was barred by the double jeopardy clause of the Michigan Constitution.

Reversed and remanded for entry of an order of dismissal.

1. CRIMINAL LAW — RETRIAL — MISTRIAL — DOUBLE JEOPARDY.

Federal and state guarantees against being placed twice in jeopardy for the same crime do not bar retrial of a defendant after a prior trial has been terminated following a successful mistrial motion; however, such a bar has been recognized where the motion was precipitated by prosecutorial or judicial impropriety or overreaching (US Const, Am V; Const 1963, art 1, § 15).

2. CRIMINAL LAW — RETRIAL — MISTRIAL — DOUBLE JEOPARDY.

A defendant, under the double jeopardy provision of the United States Constitution, may invoke the bar of double jeopardy in a second effort to try him where the prosecutor's conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial (US Const, Am V).

3. CONSTITUTIONAL LAW — STATE CONSTITUTIONS — UNITED STATES CONSTITUTION.

State constitutions can provide greater protections than those afforded by the United States Constitution.

4. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clauses of the United States and Michigan Constitutions protect against both multiple prosecutions for the same offense and multiple punishments for the same offense (US Const, Am V; Const 1963, art 1, § 15).

5. CRIMINAL LAW — RETRIAL — MISTRIAL — DOUBLE JEOPARDY.

Jeopardy attaches under the double jeopardy provision of the Michigan Constitution when a mistrial is granted on motion of a defendant or declared by a court under three conditions: (1) where the mistrial was granted because of improper conduct or actions by the prosecution, (2) where such conduct is not

merely the result of legal error, negligence, mistake, or insignificant impropriety, but taken as a whole amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal, and (3) where the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial (Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Patricia N. Conlon,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich, P.C.* (by *Milton J. Marovich*), for defendant.

Before: D. F. WALSH, P.J., and MacKENZIE and R. R. FERGUSON,* JJ.

MacKENZIE, J. Defendant was charged with assault with intent to commit sexual penetration, MCL 750.520g(1); MSA 28.788(7)(1). His first jury trial ended in a mistrial upon defendant's motion. Prior to his second trial, defendant unsuccessfully moved to dismiss on double jeopardy grounds. He was subsequently convicted as charged and sentenced to probation for five years, the first year to be served in jail, and ordered to pay costs of $700 and restitution in the amount of $50. Defendant appeals as of right, raising as his sole claim that the trial court erred in denying his motion to dismiss. We conclude that defendant's retrial was precluded by the double jeopardy clause of the Michigan Constitution, Const 1963, art 1, § 15, and reverse.

At defendant's first trial, complainant Mark Nelson testified that defendant forced him at knifepoint to a park and there attempted anal

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

penetration. Defendant, on the other hand, claimed that Nelson offered him money, beer, and marijuana for oral sex and that the two proceeded to the park to complete the bargain. Defendant denied ever attempting to force sexual relations on Nelson or attempting to harm him physically.

During the prosecutor's cross-examination of defendant at the first trial, defendant denied that he had ever previously had, or attempted to have, a homosexual encounter with anyone. In rebuttal, the prosecutor was allowed to introduce certain testimony indicating that defendant had on prior occasions solicited sex from male inmates of a juvenile home where defendant once worked. Michael Cornell testified that, when he was fifteen, defendant had purchased rum for the two of them and, when Cornell agreed to pay for it out of his allowance, defendant suggested he could pay him in another way. Cornell testified that this struck him as "queer" and "faggoty."

The first trial ended in a mistrial when the prosecutor examined on rebuttal another inmate of the juvenile home, Ray Brown. According to Brown, on an occasion when he and defendant were fighting defendant stated that perhaps they would get along better if he (defendant) gave Brown "a couple of blows." When Brown testified that he took this offensively and was angry, the prosecutor attempted to elicit a statement that Brown took defendant's comment sexually, i.e., as meaning "blow jobs." After Brown repeated only that he took the statement offensively and that it could have meant anything, the prosecutor began impeachment of his own witness in accordance with MRE 607(2)(C). The trial court disallowed this, sustaining defense counsel's numerous objections. The prosecutor then began questioning Brown about when he first met defendant and the

physical plan of the juvenile home. Objections to these questions were sustained on relevancy grounds. The prosecutor continued:

*Q.* How many floors are there in the Juvenile Home please?

*A.* Two.

*The Court:* Just a moment.

[*Defense Counsel*]: Objection, Judge. I hate to keep jumping up but the State made certain specific assertions as to what they would prove concerning some prior acts on the part of Mr. Dawson. I fail to understand what the layout of the Juvenile Home was or where the rooms were and all those things have to do with any approach on the part of Mr. Dawson with this boy for some sexual favors. You know, there's a limit as to what a lawyer ought to do and Dawson is not on trial for how he demeaned himself at the Juvenile [Home]. He said specifically that he would show that Dawson made some sexual contact with this boy, and I suggest that the questions ought to be limited to that.

*The Court:* [Prosecutor], do you wish to respond?

[*Prosecutor*]: No, Your Honor.

*The Court:* The Court will sustain the objection.

*Q.* (By [*the prosecutor*]): Can you tell me what floor your room was on that this contact with Dawson occurred?

[*Defense Counsel*]: Objection. What contact? The boy saw him in a lot of places.

[*Prosecutor*]: I agree. I agree with that.

[*Defense Counsel*]: And so I'm objecting to that.

[*Prosecutor*]: I agree and all. I will withdraw it.

*Q.* (By [*the prosecutor*]): Let's talk about all the contacts you had with Dawson and if you could, please, tell us the first contact you had with Mr. Dawson.

[*Defense Counsel*]: Objection.

[*Prosecutor*]: And where that was, excuse me Counsel. I'm not finished with my question.

*[Defense Counsel]*: Oh, I'm sorry. Go ahead.

*Q.* (By *[the prosecutor]*): Can you tell us the first contact you had, where that was and what was said by you and him?

*A.* No.

*[Defense Counsel]*: Your Honor, objection. We could be here for the next several weeks for this boy to relate every day and every time he was in contact with Mr. Dawson. Mr. Dawson worked every day and if the boy was housed there they no doubt saw each other every day at great many times during the day. All of that has absolutely nothing to do with this case and is really a stalling tactic on the part of the Prosecutor, and I'm very much surprised.

*[Prosecutor]*: Well, Your Honor, I'm really at a loss because Counsel first objects. He's not certain enough. He doesn't know there could be a lot of contact and now I'm trying to take these contacts contact by contact. It's in response to his objection.

*The Court:* The Court will sustain that objection.

*Q.* (By *[the prosecutor]*): The Court, strike that. Can you tell us how many contacts you had with Mr. Dawson in your stay there?

*[Defense Counsel]*: Objection to that, if the Court please.

*The Court:* Sustained.

*Q.* (By *[the prosecutor]*): Can you tell us how many conversations you had with Mr. Dawson?

*[Defense Counsel]*: Objection.

*The Court:* Sustained.

*Q.* (By *[the prosecutor]*): Can you tell us how many times Mr. Dawson offered you a blow job?

*[Defense Counsel]*: Objection. There is no testimony on the part of this Witness to that extent and if the Court please, I move for a mistrial. He is misstating the evidence and he knows very well he's doing it.

*The Court:* You wish to be heard.

*[Prosecutor]*: Nope.

*The Court:* Mistrial granted.

Defendant contends that the mistrial prompted by the prosecutor's questioning should have barred his retrial on double jeopardy grounds. Specifically, defendant asserts that the prosecutor, through overreaching, precipitated the mistrial. It is unclear whether this assertion is based on state or federal constitutional grounds.

As a general rule, both the federal and state guarantees against being put twice in jeopardy for the same crime do not bar the retrial of a defendant when his prior trial has been terminated upon his successful mistrial motion. *People v Tyson,* 423 Mich 357, 370; 377 NW2d 738 (1985). An exception to this rule has developed on both the federal and state levels, however, when the motion was precipitated by prosecutorial or judicial impropriety or overreaching. See generally Anno: *Double Jeopardy as Bar to Retrial After Grant of Defendant's Motion for Mistrial,* 98 ALR3d 997; *Tyson, supra,* p 370.

In determining what constitutes such prosecutorial impropriety as will bar a defendant's retrial after his motion for a mistrial has been granted, different standards have evolved in the federal and state court systems:

> The federal standard has evolved through a series of United States Supreme Court cases, culminating in the decision of *Oregon v Kennedy,* 456 US 667; 102 S Ct 2083; 72 L Ed 2d 416 (1982). In that case, the Oregon Court of Appeals had barred defendant's retrial for theft of an oriental rug on the ground that the prosecutor's conduct in asking the complaining witness whether his refusal to do business with defendant was because "he [was] a crook" constituted prosecutorial overreaching sufficient to invoke the protections of the double jeopardy clause. *Id.,* 669.
>
> The Supreme Court reversed, holding that

"[t]he circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." [*Id.,* 679.]

Prior to *Kennedy,* several federal and state courts had relied on language from earlier Supreme Court cases, which had suggested that the standard was not one of subjective intent to cause a mistrial, but rather "prosecutorial . . . overreaching," " 'bad-faith conduct by [the] judge or prosecutor,' " intended to provoke a mistrial request by the defendant in order to " 'afford the prosecution a more favorable opportunity to convict' the defendant," or "motivated by bad faith or undertaken to harass or prejudice," in analyzing issues of this kind. Since *Kennedy,* some state courts have opted to offer broader-reaching double jeopardy protection under their own constitutions, and have adhered to the pre-*Kennedy* standard. [*People v Tyson, supra,* pp 370-372.]

Assuming that defendant's position is that his retrial was barred by the double jeopardy clause of the United States Constitution, we must, consistent with our Supreme Court's analysis in *Tyson,* apply the *Kennedy* subjective intent standard to the instant facts and consider whether the prosecutor's conduct was specifically intended to provoke defendant into moving for a mistrial. We are of the opinion, based upon the above-quoted passage from defendant's first trial, that the prosecutor's question, "Can you tell us how many times Mr. Dawson offered you a blow job?" was not the product of a purposeful intent to force defendant into requesting a mistrial. The prosecutor's question was totally egregious in light of the complete dearth of testimony by Brown that defendant suggested oral sex to him, and was further aggravated by earlier prosecutorial suggestiveness in an at-

tempt to impeach the witness. Nevertheless, it seems clear that the prosecutor's conduct was motivated by his willingness to go beyond permissible bounds of questioning at any expense in order to get certain information before the jury, not by any specific intent to provoke a mistrial. We therefore conclude that under the *Kennedy* standard of prosecutorial impropriety, the double jeopardy clause of the United States Constitution did not preclude defendant's retrial.

We must next decide whether, for purposes of the double jeopardy clause of the Michigan Constitution, defendant's retrial was similarly permissible. It is well recognized that state constitutions can provide greater protections than those afforded by the United States Constitution. *People v Thompson,* 424 Mich 118, 125; 379 NW2d 49 (1985), and cases cited therein. As noted in *Tyson, supra,* some state courts have since *Kennedy* opted to offer double jeopardy protection under their constitutions broader than that available under the federal constitution by adhering to standards of prosecutorial overreaching developed by the United States Supreme Court prior to *Kennedy* See, e.g., *State v Oliver,* 57 Or App 567; 646 P2d 107 (1982), *Commonwealth v Miele,* 300 Pa Super 197; 446 A2d 298 (1982); *State v Bodley,* 394 So 2d 584 (La, 1981), cited in *Tyson, supra.* See also *Pool v Superior Court,* 139 Ariz 98, 677 P2d 261 (1984), and *State v Kennedy,* 295 Or 260; 666 P2d 1316 (1983). The *Tyson* Court declined to decide whether Michigan should adopt the pre-*Kennedy* or the *Kennedy* standard of prosecutorial impropriety. 423 Mich 372.

The double jeopardy clause protects against both multiple prosecutions for the same offense and multiple punishments for the same offense. See, e.g., *People v Robideau,* 419 Mich 458; 355 NW2d

592 (1984). The multiple prosecutions form of double jeopardy protections addresses the "right to be free from vexatious proceedings," *Robideau, supra,* p 485. It protects both the individual's interest in not having to "twice run the gauntlet," *Green v United States,* 355 US 184, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957), and his "valued right to have his trial completed by a particular tribunal," *Wade v Hunter,* 336 US 684, 689; 69 S Ct 834; 93 L Ed 974 (1949).

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v United States, supra,* 355 US 187.]

If the purpose of the double jeopardy clause were to penalize the state for conduct preventing a fair trial, it would be reasonable to limit such penalization to instances where a mistrial was intentionally provoked. See *State v Kennedy, supra,* 295 Or 272-273; 666 P2d 1324. As noted above, however, the purpose of the double jeopardy clause is not to penalize the state, but to protect individuals against prosecutorial harassment. Such harassment can rise not only when a prosecutor intentionally provokes a mistrial, but can also arise when the prosecutor willingly and consciously engages in conduct which he knows is prejudicial, and which cannot be cured by means short of a mistrial, even if he is indifferent to the probability of a mistrial. Under either circumstance, the re-

sult is that prosecutorial impropriety forces the defendant to choose between completing a tainted trial or aborting it. In either situation, the burden of a second trial is not attributable to the defendant's preference for a new trial, but to the state's readiness to force him to make that choice. See *State v Kennedy, supra,* 295 Or 276; 666 P2d 1326. It follows that a defendant placed in either situation should be protected by the prohibition against double jeopardy. The United States Supreme Court's *Kennedy* subjective intent standard does not permit such a result.

An additional problem with the subjective intent standard is that it places upon the defendant the near impossible burden of proving the prosecutor's intent. As noted by Justice Stevens in his concurring opinion in *Kennedy,* "[i]t is almost inconceivable that a defendant could prove that the prosecutor's deliberate misconduct was motivated by an intent to provoke a mistrial instead of an intent simply to prejudice the defendant." 456 US 688.

Given these substantial difficulties with the United States Supreme Court's *Kennedy* standard, we conclude that that standard does not well serve the purpose of the double jeopardy clause. Accordingly, we decline to adopt that standard in deciding whether a defendant's successful mistrial motion, predicated upon prosecutorial impropriety, will bar retrial under the double jeopardy clause of the Michigan Constitution.

We note that several other courts have concluded that prosecutorial gross negligence may constitute impropriety sufficient to bar retrial. See, e.g., *United States v Kessler,* 530 F2d 1246 (CA 5, 1976), reh den 535 F2d 660 (1976); *United States v Weaver,* 565 F2d 129 (CA 8, 1977), cert den 434 US 1074 (1978); *United States v Crouch,* 566 F2d 1311 (CA 5, 1978), reh den 570 F2d 949 (1978); *United*

*States v Clayborne,* 584 F2d 346 (CA 10, 1978); *State v Kirk,* 362 So 2d 352 (Fla App, 1978); *People v Collins,* 48 Ill App 3d 643; 6 Ill Dec 296; 362 NE2d 1118 (1977); and *Commonwealth v Bolden,* 472 Pa 602; 373 A2d 90 (1977). We believe, however, that a gross negligence standard, like the United States Supreme Court's *Kennedy* standard, is unsatisfactory in light of the purpose of the double jeopardy clause. The clause's guarantee against harassment of individuals by multiple prosecutions implies a requirement of some conscious choice of prejudicial action or willingness to risk placing the defendant repeatedly in jeopardy before the guarantee bars retrial. Negligent error, "gross" or otherwise, may properly lead to a mistrial, but in the absence of willfulness should not rise to the level of a constitutional bar on retrials. See *State v Kennedy, supra,* 295 Or 273-274, 276; 664 P2d 1324, 1326.

In *Pool v Superior Court, supra,* 139 Ariz 108-109, the Supreme Court of Arizona held that a three-part test should be used to determine when prosecutorial impropriety leading to a successful defense mistrial motion will bar retrial:

> When does double jeopardy attach if mistrial is granted on motion of defendant or court because of prosecutorial misconduct and overreaching? Is it only when the prosecutor's intent in pursuing an improper course of conduct was to cause a mistrial?
>
> *   *   *
>
> . . . In our view, . . . the resolution of the question of when jeopardy attaches should turn upon the concept of enforcing the constitutional guarantee against double jeopardy when the right to be free from multiple trials, which that clause was meant to guarantee, would be impaired by the prosecutor's intentional, improper conduct. . . .

We do not agree that standards cannot be formulated to accomplish the objectives of the clause in situations such as this. We hold, therefore, that jeopardy attaches . . . when a mistrial is granted on motion of defendant or declared by the court under the following conditions:

1. Mistrial is granted because of improper conduct or actions by the prosecutor; and

2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows[9] to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and

3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.

We agree with the Oregon Supreme Court that when such conduct occurs the burden of another trial cannot be attributed to defendant's preference to start anew rather than "completing the trial infected by error" and is, rather, attributable to the "state's readiness, though perhaps not calculated intent, to force the defendant to such a choice." *State v Kennedy,* 295 Or at 276, 666 P2d at 1326. In such a situation, the State has intentionally exposed the defendant to multiple trials for the same crime and had destroyed his expectation of completing the proceeding before the original tribunal. This is exactly what the double jeopardy provision was intended to prevent.

---

[9] The trial judge is to measure what the prosecution "intends" and "knows" by objective factors, which include the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion. He may also consider the prosecutor's own explanations of his "knowledge" and "intent" to the extent that such explanation can be given credence in light of the minimum requirements expected of all lawyers.

---

We agree with the reasoning of the Arizona

court and adopt the *Pool* three-part test as the appropriate standard for determining whether retrial is barred by the double jeopardy clause of the Michigan Constitution after a defendant's successful mistrial motion on grounds of prosecutorial impropriety.

Applying the *Pool* test to the instant case, we conclude that the prosecutor's actions during defendant's first trial constituted misconduct sufficient to warrant a prohibition against reprosecution. The prosecutor's line of questioning regarding the layout of the juvenile home and each contact Brown had with defendant was wholly irrelevant. Any notion that the prosecution may have pursued these points without realizing their irrelevancy is dispelled by his immediate restatement of the same questions to which objections had just been sustained. Indeed, the prosecutor had been previously warned by the trial court against similar transgressions. Such conduct is "an impertinence to the court." 3 Wigmore, Evidence (Chadbourne rev, 1970), § 782, p 181. The question, "Can you tell me how many times [defendant] offered you a blow job?" was clearly improper as a suggestion of facts for which no proof existed and was no more part of a legitimate line of cross-examination calculated to impeach the witness' testimony than the infamous "do you still beat your wife?" Applying minimum standards of professional responsibility, we must conclude that this question was not simply negligent. The questioning was so egregiously improper that we can only infer that the prosecutor consciously engaged in conduct which he knew to be improper, and that he did so with indifference, if not a specific intent, to create unfair prejudice. At best, the purpose appears to be to prejudice the jury and obtain a conviction no

matter what the danger of mistrial or reversal. See *Pool, supra,* 139 Ariz 109; 677 P2d 272.

We also find it significant that the prosecutor was wholly disinterested in continuing with the first trial upon defendant's mistrial motion. This is especially significant in light of record evidence that the mistrial presented the prosecutor an opportunity to strengthen his case on retrial. During the first trial, Nelson testified as part of the prosecution's case-in-chief that defendant never indicated his reason for the alleged knifepoint assault. When the prosecutor was later informed that he had failed to establish the intent necessary for conviction, Nelson was recalled, and this time testified that defendant *had* stated his intent to commit sexual penetration. Although this testimony established the intent element, it also substantially weakened the prosecution's case by presenting contradictory testimony by the complaining witness. At defendant's second trial, on the other hand, Nelson did not hesitate in testifying on direct examination that defendant stated his intent to commit a sexual act. Moreover, the recalcitrant witness, Brown, was never called.

From all these circumstances, the record supports the conclusion that the prosecutor consciously and wilfully engaged in improper conduct indifferent to the probability that a mistrial would result. Accordingly, we find that jeopardy attached and retrial was precluded.

Reversed and remanded for entry of an order of dismissal.