Leon SANDERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 08-89-00408-CR.

Court of Appeals of Texas,
El Paso.

Dec. 19, 1990.

Rehearing Overruled Jan. 16, 1991.

Randy Schaffer, Schaffer, Lambright, Odom & Sparks, Houston, Rod Ponton, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

OPINION

OSBORN, Chief Justice.

This is an appeal from a denial of a writ of habeas corpus. We affirm the trial court's denial of the writ.

The Appellant was convicted of murder on June 3, 1981. His punishment was assessed at fifty years' imprisonment. In an unpublished opinion, *Sanders v. State*, No. 08-82-00032-CR (Tex.App.—El Paso 1983, pet. ref'd), this Court affirmed the conviction and the Texas Court of Criminal Appeals denied review. The Appellant then filed a writ of habeas corpus in the United States District Court for the Western District of Texas. *Sanders v. Lynaugh*, 714 F.Supp. 834 (W.D.Tex.1988). The Federal Court held that the Appellant was denied due process of law and a fair trial due to the prosecutor's repeated statements that the Appellant would be "cut loose" if the jury found him not guilty by reason of insanity. The case was then remanded to the state trial court for further proceedings. The Appellant then filed a pretrial writ of habeas corpus alleging that a retrial would violate his constitutional rights based on double jeopardy principles. The trial court denied the writ and the Appellant appealed to this Court. In *Sanders v. State*, 771 S.W.2d 645 (Tex.App.—El Paso 1989, pet. ref'd), this Court affirmed the trial court's denial of the writ and the Court of Criminal Appeals denied review. The Appellant then filed a second application for writ of habeas corpus seeking to prevent a retrial on double jeopardy grounds with regard to prosecutorial misconduct. The trial court denied this writ and the Appellant again appealed to this Court. It is this matter that is now before us.

In the Appellant's sole point of error, he asserts that retrial is barred on double jeopardy grounds because the Appellant's first conviction was reversed due to intentional prosecutorial misconduct. At the original trial of this cause, the Appellant presented an insanity defense. Three ex-

perts testified that the Appellant was legally insane at the time he committed the murder of Ismael Rivera, a neighbor. During final argument, at the guilt-innocence stage of trial, the prosecutor made the following remarks:

The big battle in this particular case is over the question of sanity and that is very obvious. The question of whether or not Leon Sanders, despite having killed Ismael Rivera, intentionally and knowingly, as a result of that argument, as a result of that fight, hand-to-hand fight out there on the street, whether or not he should be cut loose because he was insane at the time....

.     .     .     .     .

We are going to let the man loose on an insanity defense because his room is messy and his hair is unkempt and he has a hard look on his face....

.     .     .     .     .

That's the kind of preventive medicine that we are asking you to go back and apply in that jury room today and not cut this man loose on an educated guess but find him guilty of the offense of murder....

.     .     .     .     .

This man thinks he has got a free ticket to ride and a not guilty verdict in this case means not guilty. ... He can never be tried for this crime. If you want to give this man a license to kill, then cut him loose because he can use that disease for the rest of his life if he wants to....

The Appellant's trial counsel objected to the first argument and his objection was overruled. He did not object to the other arguments.

The Federal Court in *Sanders v. Lynaugh,* 714 F.Supp. 834 (W.D.Tex.1988), held that the above-quoted "cut loose" arguments constituted a misstatement of the law in Texas in that if a defendant is found not guilty by reason of insanity, the trial court, if it determines that evidence exists to support the finding that the defendant is mentally ill, is required to transfer him to the appropriate civil court for civil commitment proceedings. The Court also found that the argument was so prejudicial that it rendered the Appellant's trial fundamentally unfair and was a violation of his right to due process of law. Specifically, the Court ruled that the improper prosecution argument combined with weak evidence of sanity deprived the Appellant of a fair trial. The case was then remanded to the state court for a new trial.

The Appellant initially asserts that the Appellant's conviction was reversed due to intentional prosecutorial misconduct. We find no indication that the Federal Court held that there was intentional prosecutorial misconduct, but rather, the Court found that the conduct was improper and this Court so held in *Sanders v. State,* 771 S.W.2d 645 (Tex.App.—El Paso 1989, pet. ref'd).

In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the United States Supreme Court announced the federal standard that the double jeopardy clause of the United States Constitution bars retrial following a mistrial where the prosecutor's conduct was intended to provoke the defendant into moving for a mistrial. The Appellant urges this Court to adopt a less stringent standard. He first states that the double jeopardy clause should preclude retrial after an appellate reversal for prosecutorial misconduct if a retrial would be barred following the granting of a mistrial for the same misconduct. The Appellant also urges that the double jeopardy clause of the Texas Constitution should preclude a retrial if the prosecutor at the Appellant's first trial engaged in misconduct designed to result in either an unfair conviction or a mistrial. This last proposition was rejected by this Court in *Sanders v. State.* With regard to the first contention, we rejected a similar assertion in *Gonzalez v. State,* 768 S.W.2d 471 (Tex. App.—El Paso 1989, pet. ref'd), wherein it was stated:

Where intentional misconduct by a government officer causes a trial to be terminated before its natural conclusion, it denies a defendant the opportunity to avoid a conviction. Where a trial proceeds to verdict and there was intentional overreaching by the prosecutor, a defendant is still somewhat benefited with two opportunities to obtain an acquittal, although one has been lessened by prosecutorial misconduct.... But to bar a subsequent trial where there are other available mechanisms to constrain overzealous prosecutors from violating the rights of defendants is too drastic. It may act as an invitation to what in essence would be a double appeal on every reversed conviction involving prosecutor error, with all the costs, delays and difficulties in determining intent. Although a prosecutor might be deterred by an extension of the Double Jeopardy Clause, it is the public that may be penalized and jeopardized. A retrial of the defendant subjects him to additional expense and anxiety, but does allow him two chances of acquittal and maintains society's valid concern for insuring that the guilty are punished.

As stated in the above-quoted case, we decline to follow the Appellant's suggestions with regard to the expansion of the clause.

The Appellant lastly contends that retrial should be barred because the prosecutor's improper argument made with the intent to obtain a conviction constitutes the functional equivalent of an intent to provoke a mistrial. The Appellant argues that even if the standard contained in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) is appropriate, the unique facts of this case show that the Appellant has met that standard. The Appellant asserts that the prosecutors in his original trial proceeded in an effort to intentionally obtain a conviction by prejudicing the Appellant by their argument in order to avoid an acquittal.

One of the prosecutors testified at the hearing in the district court. He stated that it was his conscious strategy to make the complained of arguments. His object was to stop speculation by the jury so as not to allow the jury to rely completely on the expert advice thereby abdicating their duty to determine whether the Appellant was legally insane at the time of the murder. The prosecutor stated that he researched the question prior to making the arguments. He analyzed the situation to special issue submissions in civil and criminal proceedings. He compared his contemplated arguments to submissions in capital murder cases where the jury is extensively voir dired on the consequences of their answers. On the civil side, he stated that he was aware of the long standing rule that juries were not to be advised of the consequences of their answers to special issues. The prosecutor then researched incompetency proceedings where, again, juries are not to be advised of the consequences of their special issue answers. However, he felt that much of the process in those proceedings are civil in nature. He stated that it was not clear to him that the statement was improper and he could find no clear statement in the law that the argument was error. He testified that he curtailed the argument because of the uncertainty he had in his mind. The prosecutor also felt that he had "opened the door" for the defense counsel to explain to the jury the complete consequences of a not guilty by reason of insanity verdict. He stated that it was not his intent to violate any court order or to obtain an unfair conviction. He testified that he did believe the Appellant was insane, but he did not know whether he was acting under the compulsion of insanity when he committed the murder. He stated that, at the time, there was no statutory prohibition with regard to the argument.

We find that the prosecutor's conduct did not amount to the functional equivalent of an intent to provoke a mistrial.

Point of Error No. One is overruled.

We affirm the trial court's denial of the writ of habeas corpus.