**Samuel BAUDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–93–00725–CR.**

Court of Appeals of Texas,
San Antonio.

June 30, 1994.

Mark Stevens, John Hrncir, San Antonio, TX, for appellant.

Margaret Fent, Asst. Crim. Dist. Atty., San Antonio, TX, for appellee.

Before BUTTS, RICKHOFF and STONE, JJ.

## OPINION

RICKHOFF, Justice.

This is a double jeopardy case. Before trial, the court granted a motion in limine barring evidence of any uncharged misconduct by the defendant, Samuel Bauder, that occurred before the charged offense.

After the jury was impaneled, the prosecutor presented the arresting officer's testimony that he approached a car parked on Raintree Path. The occupants fled in the car, but the officer quickly caught them. When the driver, the appellant, got out of the car, he was barely able to stand and his pants were unbuttoned. The officer thought he appeared intoxicated. Additional testimony covered the arrest and transportation for an intoxilyzer test. After this testimony, the prosecutor asked what appellant had been doing in the parked car before the alleged crime. The officer responded in graphic language that the defendant was receiving oral sex. Defense counsel moved for a mistrial. The prosecution argued for a curative instruction, but the court granted the mistrial.

■ The appellant filed a petition for a pretrial writ of habeas corpus. He claimed trying his case again would subject him to double jeopardy. The trial court found that (1) the officer's testimony about oral sex was based on conjecture and speculation, and lacked probative value; (2) the prosecutor had elicited the testimony to inject prejudice into the trial; and (3) the prosecution did not elicit the testimony to goad appellant into obtaining a mistrial. We affirm.

■ Mr. Bauder claims on appeal that trying him after that mistrial would violate the double jeopardy clauses of the state and federal constitutions.[1] The federal double jeopardy clause bars retrial only if the government conduct in question intentionally provoked the motion for a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 678–79, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982). The appellant argues we should create a more generous legal standard under the state double jeopardy clause, citing *Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). Although existing cases on point predate *Heitman*, we see no reason to deviate from the pronounce-

ments of the Texas Court of Criminal Appeals. *See, e.g., Collins v. State*, 640 S.W.2d 288, 290 (Tex.Crim.App.1982). (The *Kennedy* standard applies in Texas.).

As the Supreme Court stated in *Oregon v. Kennedy:*

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact."

456 U.S. at 675–76, 102 S.Ct. at 2089 (citation omitted).

■ As a matter of federal law the intent of the prosecutor is a question for the trier of fact. *Collins v. State*, 640 S.W.2d at 288. In this *habeas corpus* proceeding, the trial judge was the trier of fact. TEX.CODE CRIM. PROC.ANN. art. 11.44 (Vernon 1979). Since the trial judge in this case was present as the events unfolded, and since he had the opportunity to judge the demeanor and credibility of the actors and witnesses, it was and should be his responsibility to infer the existence or non-existence of the requisite intent from the objective facts and circumstances. *Anderson v. State*, 635 S.W.2d 722, 726 (Tex.Crim.App. 1982).

While safeguarding fundamental rights is the responsibility of every member of the bar, the duty falls primarily on trial judges. Individual prosecutors have provoked—and will provoke—mistrials intentionally. Their testimony about their intent is not determinative. Judging the intent of advocates is but one of many difficult fact determinations for all trial judges. The great difficulty inherent in judging human behavior is why appellate courts impose their judgment only when the trial court's determination is clearly erroneous. *Ex parte May*, 852 S.W.2d 3, 5 (Tex.App.—Dallas 1993, pet ref'd).

---

1. U.S. CONST. amend V; TEX. CONST., art. I, § 14.

Under the record, we cannot conclude he was wrong. The appellant's points are overruled, and the decision of the trial court is affirmed.

BUTTS, Justice, dissenting:

I respectfully dissent. The record and conclusions of the trial judge, viewed objectively, indicate the prosecutor's misconduct deprived the defendant of his jury. The United States Supreme Court set the federal double jeopardy standard for the defendant's predicament, which Texas courts have so far interpreted to be consistent with the Texas Constitution: "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct 2083, 2089, 72 L.Ed.2d 416 (1982). Thus, this court has held that the controlling question under *Kennedy* is whether the prosecutor in the present case intentionally acted to force a mistrial. *Creekmore v. State*, 860 S.W.2d 880, 891 (Tex.App.—San Antonio 1993, pet ref'd) (en banc).

## THE SUBJECTIVE FEDERAL STANDARD

The present case, however, demonstrates the inherent impracticality of attempting to safeguard fundamental constitutional rights by subjectively trying to infer a prosecutor's thought processes from the facts and circumstances. The Supreme Court majority recognized this in *Kennedy* when it stated that a standard that examines the intent of the prosecutor is "certainly not free from practical difficulty." 456 U.S. at 674–76, 102 S.Ct. at 2089; *see also* 456 U.S. at 688, 102 S.Ct. at 2096, n. 22 (remainder of the Court agrees with the majority that there are practical difficulties in determining prosecutor's subjective intent). The Court understated the problem.

The Supreme Court noted in *Kennedy* that it contemplated the appellate and federal courts being able to review the trial courts' determinations. The court stated:

> Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system. When it is remembered that resolution of double jeopardy questions by state trial courts are reviewable not only within the state court system, but in the federal court system on habeas corpus as well, the desirability of an easily applied principle is apparent.

456 U.S. at 675, 102 S.Ct. at 2089.[1]

To provide any meaningful protection, double jeopardy analysis must be objective. *Kennedy*, 456 U.S. at 679–80, 102 S.Ct. at

---

1. Inferring intent *is* a familiar process. It is familiar in deciding civil cases on a "more probable than not" basis, and in criminal cases where the facts and circumstances prove defendants' intent "beyond a reasonable doubt." However, neither of these standards is appropriate for determining a prosecutor's intent. Determining his "probable" intent is inherently a guess, not appropriate for criminal proceedings or fundamental rights, and defendants certainly should not have to prove beyond a reasonable doubt that their rights were violated. Putting the burden of proof on the prosecutor to prove his intent is likewise problematic.

If inferring intent is indeed so easy, one wonders why Texas and federal courts have had so much difficulty doing so during the twelve years since the "intent to goad" standard was established. *See Lewis v. State*, 865 S.W.2d 478, 480 (Tex.App.—Tyler 1993, no writ) (record of trial terminated by mistrial, but no record of double jeopardy proceeding to show intent); *Creekmore*, 860 S.W.2d at 891 (*en banc*) (Defendant presented no evidence intentional misconduct of the prosecutor provoked the motion for mistrial.);

*Ex parte May*, 852 S.W.2d 3, 6 (Tex.App.—Dallas 1993, pet ref'd) ("clearly erroneous" review of trial court's ruling based on prosecutor's testimony she did not intend to provoke mistrial by offering inadmissible hearsay); *Black v. State*, 845 S.W.2d 368, 369–70 (Tex.App.—Houston [1st. Dist.] 1992, no writ) (no evidence prosecutor intended to goad mistrial where judge reconsidered *Batson* motion after jury was impaneled); *Sanders v. State*, 801 S.W.2d 955, 957 (Tex. App.—El Paso 1990, pet ref'd) (Court of appeals reviewed prosecutor's testimony in hearing after reversal of first conviction about his good faith and concluded his conduct "did not amount to the functional equivalent of an intent to provoke a mistrial."); *Apolinar v. State*, 790 S.W.2d 108, 112 (Tex.App.—San Antonio 1990) (*en banc*) (Court of appeals found trial court did nothing in bad faith to provoke a motion for mistrial), *vacated for lack of jurisdiction* 820 S.W.2d 792 (1991); *Sanders v. State*, 771 S.W.2d 645, 650 (Tex. App.—El Paso 1989, pet ref'd) (Federal court's finding prosecutor's misconduct was improper did not invoke double jeopardy because there was no finding the misconduct was intentional);

2092 (Powell, J., concurring) ("Because 'subjective' intent may be unknowable, I emphasize that a court—in considering a double jeopardy motion—should rely primarily upon the objective facts and circumstances of the particular case."). It is not meaningful protection for reviewing courts to surmise that a trial court has guessed the prosecutor's intent correctly.

In the present case, the record and the trial court's findings indicate that under the circumstances the prosecutor should have expected a mistrial to result from his misconduct. The trial court, however, concluded the prosecutor did not intend the natural consequences of his actions. The trial court found:

> *Gonzalez v. State*, 768 S.W.2d 471, 473 (Tex. App.—El Paso 1989, no writ) (refusing double jeopardy bar after reversal for prosecutorial misconduct, citing all the "difficulties in determining intent"); *Beasley v. State*, 745 S.W.2d 406, 408 (Tex.Civ.App.—Houston [1st Dist.] 1988) (no evidence prosecutor intentionally withheld the evidence in order to provoke a mistrial request), *rev'd on other grounds* 766 S.W.2d 792 (1989); *Trimboli v. MacLean*, 735 S.W.2d 953, 955 (Tex. App.—Fort Worth 1987, no writ) ("Nothing in the record would lead to a conclusion that the trial court got angry at the juror just so Trimboli would move for a mistrial."); *Alfred v. State*, 720 S.W.2d 218, 220 (Tex.App.—Houston [14th Dist.] 1986, pet ref'd) (No double jeopardy when case reversed "due to an unguarded statement made by the trial court in the presence and hearing of the jury, which prejudiced Appellant's right to a fair trial...."); *Ex parte Kelly*, 713 S.W.2d 399, 400–02 (Tex.App.—Amarillo 1986, no writ) (Appellate court affirmed the trial court factual finding that prosecutors concealed State's addition of adulterants to drugs in order to obtain a conviction, not with intent to provoke the defendant into moving for a mistrial.); *Dishongh v. State*, 703 S.W.2d 358, 359–60 (Tex.App.—Houston [14th Dist.] 1986, no writ) (Prosecutor testified he did not intentionally violate order in limine, did not intend to provoke mistrial; he was happy with the jury, and the chief prosecutor only expressed reservations about the jury *after* the court granted a mistrial. Court of appeals found *no* evidence of intent to provoke a mistrial.); *Fielder v. State*, 683 S.W.2d 565 (Tex.App.—Fort Worth 1985, no writ) (Appellate court referred to trial court finding of no intent to provoke a motion for mistrial, but did not mention whether prosecutorial misconduct had caused the mistrial.); *Tenery v. State*, 680 S.W.2d 629, 634–35 (Tex.App.—Corpus Christi 1984, pet ref'd) (Trial court refused motion for mistrial, granted new trial after conviction for "unintentional improper jury argument." Appellate court affirmed finding that prosecutor calling defendant a "son of a

1. that the prejudicial "evidence" was inadmissible conjecture and speculation, not based on personal knowledge;

2. that the court had already ordered the prosecutor not to present evidence of prior crimes or misconduct without first requesting another court hearing;

3. the prosecutor intentionally injected those statements to prejudice the defendant; and

4. by injecting inflammatory, graphic conjecture about oral sex into the DWI trial in violation of the court's ruling on hearsay and the order in limine, the prosecutor did not intend to goad the defendant into moving for a mistrial.[2]

> bitch" and continuing to use profanity was "unintentional improper jury argument."); *Collins v. State*, 672 S.W.2d 588, 597 (Tex.App.—Fort Worth 1984, no writ) (Prosecutor who did not have information when he answered discovery, but did not inform the defendant when he got it "did not act deliberately and affirmatively to *suppress material evidence, and did not intend to* force a mistrial." The court of appeals stated, "The actions, though in error, were not intended to prejudice the defendant's right to a fair trial."); *Ex parte Loffland*, 670 S.W.2d 390, 394 (Tex.App.—Fort Worth 1984, pet ref'd) (Judge who, after testimony began, mistakenly informed counsel he had no jurisdiction did not intend to provoke the defendant to move for a mistrial.); *Gillett v. State*, 663 S.W.2d 480, 482 (Tex.App.—Corpus Christi 1983, no writ) (Court of appeals found no showing of intent to goad defendant into moving for a mistrial when prosecution witness testified in violation of order in limine.); *Lozano v. State*, 658 S.W.2d 201, 202 (Tex.App.—El Paso 1983, no writ) (District attorney who knew of evidence favorable to defendant before trial, *but did not disclose it until after the jury* was impaneled did not intend to provoke the defendant into moving for a mistrial.). I find no Texas case published in which an appellate court upheld a double jeopardy claim under *Kennedy*.

Numerous federal cases have also been unable to apply the standard to uphold double jeopardy claims when prosecutorial misconduct deprived the accused of his jury. The courts' inability to use the standard to protect defendants for the last twelve years indicates clearly that something must be done to re-establish a balance between the rights of the accused to the first tribunal and the interest of society in fair trials designed to do justice.

2. The trial court stated:

> I find ... the defense made a motion before the court through a Motion in Limine requiring that the State asked for another court hear-

Reviewing the record, the objective facts do not support the trial court's conclusion about the prosecutor's intent. The prosecutor denied he intended to goad the defendant into moving for a mistrial, but his testimony (and the trial court's finding) indicates he knew he was trying to get improper, extraneous behavior before the jury, that the court sustained an objection based upon hearsay and the motion in limine, and he then repeated the question and got the desired response. Under these circumstances, the trial court's finding of no intent is clearly erroneous because the objective facts belie the prosecutor's claim he did not intend to provoke a mistrial. *See Anderson v. State*, 635 S.W.2d 722, 726 (Tex.Crim.App.1982) (en banc) (apparently limiting review of trial court findings on this issue). If double jeopardy is to mean anything in Texas, appellate courts must be able to analyze the salient issues from the objective facts in the record.

If we cannot conclude from the objective facts in the record whether double jeopardy rights have been protected, then it is time to breathe life into the double jeopardy clause of the Texas Constitution and craft a standard more "free from practical difficulty" that will protect our citizens from governmental overreaching.

## PRACTICAL DIFFICULTIES WITH THE *KENNEDY* STANDARD

The obvious difficulty with the *Kennedy* standard is that it requires "[i]nferring the existence or nonexistence of intent from objective facts and circumstances." *Kennedy*, 456 U.S. at 675, 102 S.Ct. at 2089. Put plainly, this means, "look at the prosecutor's actions under the circumstances and try to guess what he was thinking." A fundamental right should not be left dangling from such a tenuous thread.

The focus on the intent of the prosecutor is apparently a mechanism to avoid applying double jeopardy every time there is a mistrial. Clearly, barring retrial whenever a defendant manages to get a mistrial after prosecutorial misconduct or error would be unacceptable. *Wade v. Hunter*, 336 U.S. 684, 688–90, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). On the other hand, relying on the prosecutor's intent suffers serious drawbacks in addition to its irrelevance to the predicament of the accused. In most circumstances, it can be little more than a guess. The same unjust prosecutorial misconduct can occur to two defendants, with inconsistent results.

ing before going into areas either involving previous crimes or previous acts of misconduct.

The prosecution in developing its case with its first witness, Officer Thomas, developed the scenario of the case from his initial observations of the defendant's [sic] to his booking at the county jail. The State's Attorney then went back to question Officer Thomas concerning his observations of the defendant at the initial contact, at the cul-de-sac on Raintree, Raintree Path.

The defendant objected, as required by the prior ruling of the court, and his own responsibilities to his client to the hearsay testimony. The witness was cautioned not to testify to other than personal observations, by the Court. The State again asked the question of the defendant, of the state's witness, Officer Thomas, as to what the defendant was doing, resulting in the—in the prejudicial response of the witness.

Further hearing outside the presence of the jury, the Court determines that the witness, Officer Thomas, did not have the ability to have been able to see what the defendant was doing. If anything, his view would have been blocked by the very body of the car from the motor on.

The statement as to what the defendant was doing attributed by Officer Thomas to Mr. Bauder would be based, one, merely on conjecture and speculation, and not based on his own personal observations, and as such, not personal knowledge and inadmissible.

The Court further finds that the purpose of the prosecution in eliciting the testimony from the witness concerning what the officer would have speculated adds to the actions of Mr. Bauder, the defendant, were based for the purpose of interjecting prejudicial material into the trial, not from the observations that could have been offered by the officer such as what were repeated during the hearing outside the presence of the jury but prejudicial in terms of the conclusionary nature of the officer's testimony in the actual response before the Jury. And the prosecutions intent was to inject those statements and conclusions, rather, for their prejudicial purposes against the defendant.

However, the Court finds that it was not the intent of the State to goad the defendant into moving for a mistrial per Kennedy v. Oregon. I'm denying your Motion for Dismissal based on the double jeopardy claim, or barring prosecution based on a double jeopardy claim.

Further, as four justices noted concurring in the *Kennedy* judgment, "a standard that requires a prosecutor to take the stand to explain his trial strategy and his train of thought prior to making a serious error is of questionable wisdom."

The El Paso court of appeals has suggested that multiple trials give the defendant multiple chances for acquittal. *Sanders*, 801 S.W.2d at 957 *quoting Gonzalez*, 768 S.W.2d at 473. Defendants, however, are presumed innocent until proven guilty; the only reason they usually need an acquittal is to make the State stop trying to bring them to trial. Multiple trials are in fact multiple chances to obtain a conviction.[3]

In *Sanders* and *Gonzalez*, the El Paso court also treated double jeopardy rights as a way of disciplining prosecutors for over-

reaching.[4] This, again, misses the purpose of double jeopardy. The issue is whether the accused will be deprived of his right to the first tribunal.[5] It makes little difference to the accused whether the motivation of the prosecutor was innocent, was calculated to increase the probability of conviction in that trial, or was calculated to get the defendant in front of a jury more favorable to the prosecution. Constitutional rights are not enforced merely to punish the State, and defendants' rights should not be bound up in a determination of whether a prosecutor deserves discipline.

## A MORE OBJECTIVE STANDARD

The *Kennedy* standard is too subjective to provide meaningful protection. Texas courts should set a more objective standard under the state double jeopardy clause. *See gener-*

**3.** *United States v. Ball*, 163 U.S. 662, 667–69, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896) ("The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial.").

**4.** *Sanders* and the Oregon Supreme Court on remand in *Kennedy* noted that the prosecutor's behavior is subject to discipline under the disciplinary rules, and that the trial court has duty under the Code of Judicial Conduct to report the disciplinary infractions. It should not be surprising that officers of the court should suffer discipline for intentionally trampling citizens' rights, but it should not be assumed the government is being punished each time constitutional rights are upheld.

**5.** The defendant's double jeopardy interest is "being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." *United States v. Jorn*, 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971).

[O]ne of the principal threads making up the protection embodied in the Double Jeopardy Clause is the right of the defendant to have his trial completed before the first jury empaneled to try him. . . . In such a case, the defendant's valued right to complete his trial before the first jury would be a hollow shell if the inevitable motion for mistrial were held to prevent a later invocation of the bar of double jeopardy in all circumstances.

*Kennedy*, 456 U.S. at 672–74, 102 S.Ct. at 2088 (majority opinion). As Justice Stevens concurred in *Kennedy*:

For example, a prosecutor may be interested in putting the defendant through the embarrass-

ment, expense, and ordeal of criminal proceedings even if he cannot obtain a conviction. In such a case, with the purpose of harassing the defendant the prosecutor may commit repeated prejudicial errors and be indifferent between a mistrial or mistrials and an unsustainable conviction or convictions. Another example is when the prosecutor seeks to inject enough unfair prejudice into the trial to ensure a conviction but not so much as to cause a reversal of that conviction. This kind of overreaching would not be covered by the Court's standard because, by hypothesis, the prosecutor's intent is to obtain a conviction, not to provoke a mistrial. Yet the defendant's choice—to continue the tainted proceeding or to abort it and begin anew—can be just as "hollow" in this situation as when the prosecutor intends to provoke a mistrial.

*Kennedy*, 456 U.S. at 689, 102 S.Ct. at 2096–97 (footnotes omitted) (Stevens, J., concurring in the judgment). The *Kennedy* standard, in my opinion, gives lip service to double jeopardy, but is out of touch with the fundamental nature of the right:

The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). The resources and power of the State, if unchecked, can steamroll fundamental rights as easily by indifference as by design.

*ally* Heitman v. State, 815 S.W.2d 681 (Tex. Crim.App.1991). A number of solutions would be more practical and yield better protection of fundamental double jeopardy rights.[6]

The four justices concurring in the judgment in *Kennedy,* proposed an approach that properly focuses upon whether the defendants have been deprived of their rights: "To invoke the exception for overreaching, a court need not divine the exact motivation for the prosecutorial error. It is sufficient that the court is persuaded that egregious prosecutorial misconduct has rendered unmeaningful the defendant's choice to continue or to abort the proceeding." 456 U.S. at 689, 102 S.Ct. at 2097. This approach properly focuses upon whether the accused have been wrongfully deprived of their unbiased first tribunal, and were handed the Hobson's choice of (1) proceeding or (2) submitting to a second trial the Federal and Texas constitutions say they should not have to suffer.

The minority in *Kennedy* suggested case-by-case review under watchwords such as "overreaching," "egregious prosecutorial misconduct," and rendering the defendant's choice "unmeaningful." These concepts state valid policy concerns, but they produced only chaotic and varying protection of double jeopardy rights. However, when the *Kennedy* majority adopted a standard based upon the prosecutor's intent, it reduced that protection even further. We should have no more trouble than other states in choosing a standard that works.

A number of possible standards implement the policy the *Kennedy* minority attempted to preserve, but are more practical than either case-by-case review or the current, nearly non-existent review.

Whether double jeopardy should bar retrial balances the defendant's right to the first tribunal and society's interest in fair trials designed to end in just judgments. *See Wade v. Hunter,* 336 U.S. 684, 688–90, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). A motion for mistrial normally waives the right to the first tribunal. *See Kennedy,* 456 U.S. at 672–74, 102 S.Ct. at 2088. The rationale for the exception now at issue is that the prose-

---

**6.** One possible solution is to shore up the federal standard by a state procedure that allows Texas appellate courts to make an independent determination from the objective facts on the record. We currently apply the standard of review set forth in the federal procedural rules, perhaps reasoning that this will prevent the Supreme Court from objecting that we protect our citizens too little. Our state procedures, however, are our own. The Court of Criminal Appeals has held that the intent of the prosecutor is a matter for the finder of fact as a matter of federal law, and the same standard applies in Texas. *Collins v. State,* 640 S.W.2d 288, 290 (Tex.Crim.App. 1982).

*Kennedy* relies on appellate review to explain the need for an easy to apply standard. 456 U.S. at 675–76, 102 S.Ct. at 2089. Limiting the deference we give to the finder of fact is also consistent with this reliance. If we raise the level of appellate scrutiny, it would be difficult for the Supreme Court to object that our procedure for implementing their substantive standard protects federal rights too well.

Crafting a better, objective state constitutional standard to apply with this limitation of deference would be even better. A number of approaches would be suitable.

One possible standard is whether the prosecutor's behavior is the "functional equivalent" of intent to goad the defendant into moving for a mistrial. We could easily conclude in the present case that the prosecutor's actions provided the "functional equivalent" of intent to provoke a mistrial, a phrase the author of the majority opinion in this case and another court have recited while discussing the issue in the past. *Creekmore,* 860 S.W.2d at 882 (panel opinion before en banc rehearing); *Sanders,* 801 S.W.2d at 957. This standard appears somewhat more objective than the *Kennedy* standard, since it appears to disregard the prosecutor's actual intent, and focuses objectively on whether the prosecutor's actions can be expected to function in a manner that would be expected to provoke a mistrial.

Another possible standard is whether, under all the circumstances on the record at the time of the prosecutor's misconduct, a "reasonable person" would expect the conduct of the prosecutor to provoke a mistrial. Another possibility is whether the prosecutors knew or should have known their misconduct was likely to result in a mistrial. Even better might be a test that eliminates intent entirely: Whether, regardless of his intent, the prosecutor's misconduct has created a substantial probability of an erroneous verdict that cannot be cured by any means short of a mistrial.

The "reasonable person" approach, the "knew or should have known" approach, the "functional equivalent" approach, or entirely eliminating the prosecutor's intent from the analysis would each offer significant improvement over the current standard. Changing the standard of review could only improve whatever standard the Court of Criminal Appeals might choose.

cutor's misconduct rendered the first trial unfair. *See United States v. Dinitz,* 424 U.S. 600, 607–09, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976). If intentional or unintentional misconduct creates a substantial probability of an erroneous verdict that cannot be remedied short of a mistrial, it is "egregious." [7] If fair proceedings designed to yield just results have gone awry despite the best efforts of all concerned, however, defendants' choices are not "meaningless." If they have not been wrongfully deprived of their jury, but simply seek a better one, double jeopardy rights are not implicated.

Mistrials that result from proper proceedings should not result in double jeopardy claims. It cannot be helped that probative evidence may also be somewhat prejudicial, or that the facts, when argued, may have some prejudicial ramifications. An accused might choose to seek a new jury when a prosecutor presents relevant evidence about which reasonable minds might differ upon whether it is more prejudicial than probative, when there is a hung jury, or under numerous other circumstances that involve no misconduct.

The proper balance can be struck by reducing the focus upon prosecutorial intent and increasing the focus upon *prosecutorial misconduct.* This would allow the adversary system to function and yet would not allow every accused who chooses a mistrial to go free.

The appellant proposes we adopt a state standard based upon the prosecutor's "indifference." This standard, adopted in several other states,[8] is easier to determine from the objective facts and circumstances because it requires less certainty about the prosecutor's subjective thoughts. When the Oregon Supreme Court adopted this "indifference" standard on remand from *Oregon v. Kennedy,* it reasoned that since double jeopardy is a protection for the accused and not a sanction against the State, protection of this fundamental right should not turn upon the culpable intent of prosecutors. *State v. Kennedy,* 295 Or. 260, 666 P.2d 1316, 1323–24 (1983) (extending state constitutional double jeopardy protection).

The Court of Criminal Appeals should seriously consider the proposal that we follow this lead and lower the threshold of intent to "indifference." To uphold a double jeopardy claim now, trial courts must read the minds of prosecutors. Often over the prosecutor's sworn testimony to the contrary, the trial court must conclude the prosecutor orchestrated the mistrial. Next, the trial court must initiate disciplinary action against the prosecutor, who often practices regularly before the court. *Gonzalez,* 768 S.W.2d at 473 (citing Canon 3(B)(3), Code of Judicial Conduct). Lowering the standard to indifference would ameliorate the difficulty and the collateral consequences of upholding double jeopardy.

Under this approach, we could easily conclude the facts in the record indicate this prosecutor had to be at least indifferent to

**7.** One commentator who criticizes the intent-based standard in much more depth advocates a "plain error" rule to ensure the misconduct is sufficiently egregious and to limit immunization from further prosecution to cases in which reversal and a second trial would be highly probable. Steven Alan Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure,* 135 U.PA.L.REV. 1365, 1473 (1987) (footnotes omitted). I do not advocate turning back down the abandoned, rocky road of "plain error" that we long ago abandoned in Texas. I do, however, think limiting immunization to cases in which the error would have been reversible is appropriate.

**8.** *See Pool v. Arizona,* 139 Ariz. 98, 677 P.2d 261, 271–72 (1984) (improper conduct known to be improper or prejudicial, pursued for any improper purpose with indifference to a significant resulting danger of mistrial or reversal); *State v.*

*Kennedy,* 295 Or. 260, 666 P.2d 1316, 1326 (1983) (Barred when counsel knows conduct is improper and prejudicial, and "either intends or is indifferent to the resulting mistrial or reversal."); *See also People v. Dawson,* 154 Mich.App. 260, 397 N.W.2d 277, 284 (1986) (adopting the *Pool* test from Arizona), *aff'd on other grounds People v. Dawson,* 431 Mich. 234, 427 N.W.2d 886 (1988) (Counsel for the People admitted trial counsel had acted with intent to provoke a mistrial, violating the *Kennedy* rule, so the supreme court saw no reason to address a separate state standard.). *Cf. Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321, 325 (1992) (adding an additional ground for double jeopardy bar under state constitution when "the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial").

whether his misconduct might cause a mistrial. While the Court of Criminal Appeals can choose from a number of alternatives in crafting a state standard, the indifference standard now proposed is a workable alternative. In any event, the Court of Criminal Appeals should establish a standard that does not require reading the mind of the prosecutor to determine whether the defendant's rights were violated.