**Andres Marin MARES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–87–00263–CR.**

Court of Appeals of Texas, El Paso.

Oct. 5, 1988.

Rehearing Denied Nov. 16, 1988.

Charles Louis Roberts, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for the State.

Before OSBORN, C.J., and SCHULTE and WOODARD, JJ.

## OPINION

SCHULTE, Justice.

This is an appeal from a conviction for indecency with a child. The jury assessed punishment at seven years' imprisonment, probated. We affirm.

■ Points of Error Nos. One through Four challenge the admission of certain "outcry" statements by the seven year old victim to her mother, ostensibly under Tex. Code Crim.Pro.Ann. art. 38.072 (Vernon Supp.1988), as violative of Texas and federal constitutional rights of confrontation and cross-examination. We find initially that Appellant has failed to preserve these issues for review on appeal. A failure to lodge a timely specific objection waives any error in the admissibility of evidence. *Marini v. State*, 593 S.W.2d 709 (Tex.Crim. App.1980); *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App.1978). Error is further waived by failure to object at each subsequent offer of the same material. *Boles v. State*, 598 S.W.2d 274 (Tex.Crim.App.1980). Understandably, this does not necessitate interruption of each sentence of the witness's challenged response. It does, however, require renewal of the appropriate objection at the outset of each discrete attempt to pursue the contested evidence, either with the same witness or with some other witness proffering the same challenged evidence.

■ In this case, the State began to elicit an initial hearsay statement of the child to her mother in November 1986, not concerning the indicted act but prior suggestive visual behavior of the Appellant in the child's presence. (Appellant was the child's Spanish teacher and all alleged and extraneous misconduct allegedly occurred in class). The defense objected on the same basis as presented in these first four points of error. The objection was overruled. Appellant then asked for a "running objection." The mother then testified concerning the November outcry, a subsequent similar outcry in December, the March outcry relating to the indicted offense and her confirmation of another report by her daughter to a classmate concerning the same March indicted offense. While the initial overruling of the first objection may have been sufficient to preserve error in the first recitation of the November hearsay, the "running objection" was inadequate to preserve error as to the remainder. A "running object" does not preserve. *Goodman v. State*, 701 S.W.2d 850 (Tex. Crim.App.1985).

Had these issues been preserved, we would, nonetheless, not be disposed to sustain these points of error. We would agree that the same principles expressed in *Long v. State*, 742 S.W.2d 302, 303 (Tex.Crim. App.1987), leading to the nullification of Tex.Code Crim.Pro.Ann. art. 38.071, sec. 2 (Vernon Supp.1988), are equally applicable to Article 38.072, and the latter statute suffers the same constitutional infirmity. That, however, does not end our inquiry as to the existence of reversible error in this case.

In this case, the State called the child complainant to the stand, and she was subjected to full cross-examination in the presence of the Appellant and the jury. We are mindful of the fact that the complainant in *Long* also testified before the jury in the presence of the defendant, but it was of particular significance to the majority of the Court of Criminal Appeals that: (1) this occurred on rebuttal and (2) the substance

of her testimony was a mere reiteration of the contents of the offending videotape testimony. Justice Duncan went so far as to characterize the rebuttal testimony as a bolstering of the unconstitutional videotape evidence. *Long,* 742 S.W.2d at 322. The opposite is true here. The child was called by the State during its case-in-chief. The substance of her testimony was far more detailed and significant then the outcry recitation from the mother. If anything, in this case, the outcry could be more properly characterized as premature bolstering of the live testimony of the child. Of course, that was neither the trial objection nor an argument raised on appeal.

The battle lines in *Long* were clearly drawn primarily over the facial constitutionality of Article 38.071, sec. 2. But for a brief consideration of the effect of the rebuttal testimony of the complainant, little attention was focused upon the question of reversible or harmless error. Certainly the case-in-chief testimony of the complainant in this case is a significantly distinguishing feature from *Long. Long,* 742 S.W.2d at 325 (Teague, J. Concurring). So too is the fact that the witness was not merely available for call by the defense but was actually called by the State during its case-in-chief, subject to full cross-examination before the jury. This should satisfy other major concerns raised in the majority opinion by Justice Duncan and the concurring and dissenting opinion of Justice Campbell in *Long. Long,* 742 S.W.2d at 321, 329.

In *Coy v. Iowa,* 487 U.S. ——, ——, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857, 867 (1988), the Supreme Court held that even constitutional error regarding rights of confrontation and cross-examination are subject to harmless error analysis under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Indeed, finding confrontation error in the Iowa child-witness protective statute in that case, the cause was remanded to the Iowa Supreme Court for harmless error consideration.

In *Kentucky v. Stincer,* 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), the Supreme Court was faced with another confrontation complaint. There, the defendant was excluded from a pretrial in-chambers hearing to determine the competency of child witnesses. Nonetheless, the witnesses subsequently testified during the State's case-in-chief, subject to full cross-examination, including material dealt with at the pretrial hearing. The Supreme Court noted that the Confrontation Clause merely guarantees an opportunity for effective cross-examination before the jury, not confrontational cross-examination at each and every opportunity. *Stincer,* at ——, 107 S.Ct. at 2666–2667, 96 L.Ed.2d at 647. The Court concluded that the full opportunity for cross-examination at trial in the defendant's presence meant there had been *no violation* of the constitutional right to confrontation and cross-examination.

In conclusion, had the issues been preserved for review, we would not be disposed to sustain the points and reverse the conviction. We find such a conclusion proper under any one or more of three anaylses. Under *Stincer,* it may be said that the case-in-chief testimony of the child in this case satisfied the confrontation right and there was no error in that regard. Alternatively, under *Coy* and *Chapman,* mindful of the majority concerns in *Long,* it may be said that the substantive outcry testimony ran afoul of the confrontation and cross-examination rights of the accused, but that such error was in this case harmless given the rest of the evidentiary presentation. Finally, it is equally cogent to find that the testimony of the child eliminated the potential constitutional errors, leaving only the lesser order of evidentiary complaints of hearsay and improper bolstering—neither of which is urged on appeal. Points of Error Nos. One, Two, Three and Four are overruled.

In Point of Error No. Five, Appellant complains that the hearsay statements addressed above were inadmissible due to the trial court's failure to make the requisite findings of reliability mandated by Article

38.072. The waiver disposition of the preceding four points of error renders this issue moot. Point of Error No. Five is overruled.

Point of Error No. Six complains of the trial court's failure to give a limiting instruction as to the consideration which the jury could permissibly give to the outcry testimony. No such instruction was requested, either contemporaneously with the testimony or prior to the delivery of the charge to the jury. Point of Error No. Six is overruled.

█ Points of Error Nos. Seven and Eight assert that the evidence was insufficient to support the verdict. The indictment alleged that the Appellant touched the genitals of the complainant. The complainant testified that at the end of her Spanish class, she stood on a stool to get a drink of water at the fountain in her classroom. While she was drinking, the Appellant moved next to her and "put his hand under." She re-enacted the event, including what Appellant purportedly did with his hand, in the presence of the jury, first utilizing her father in the role of Appellant, then by using a doll representing herself. She testified that she was wearing a dress, pantyhose and panties (the mother testified earlier that the child refers to both pantyhose and panties as pantyhose). She further stated that Appellant engaged in skin-to-skin contact. The outcry statements, not having been opposed by adequate objection in the trial court, are ripe for inclusion in the total substantive evidence of the offense-either under Article 38.072 or as unobjected to hearsay. *Chambers v. State,* 711 S.W.2d 240 (Tex.Crim.App.1986). The mother testified that the child told her that Appellant put his hand inside her pantyhose, demonstrating with her hand.

> She told me verbally that Mr. Mares put his hand in her pantyhose and underwear.
>
> She put her hand in under her dress under her pantyhose and tights and took it out.

Without timely objection, the mother related her confirmation of an additional outcry made to a classmate of her daughter:

> I asked her [the classmate], 'Mija, did [the complainant] tell you what happened'? She said, 'Yes. [Complainant] said Mr. Mares touched her inside her underwear.'

The critical question is the nature of the demonstrations conducted by the complainant in her testimony before the jury. It is apparent that she replicated the Appellant's hand movements using both her father and the doll. The demonstrations were ripe for jury consideration in assessing the adequacy of the State's proof. Nowhere, however, does the record reflect a verbal description, by either side, of the scope or limits of her demonstrations in relation to the alleged misconduct. In the absence of a complete statement of facts from which the appellate court may consider the total evidentiary presentation upon which the jury could properly base its decision, a review of the sufficiency of the evidence is not available. *Sellars v. State,* 401 S.W.2d 835 (Tex.Crim.App.1966); cf. *DeLeon v. State,* 500 S.W.2d 862 (Tex. Crim.App.1973). Points of Error Nos. Seven and Eight are overruled.

█ In Points of Error Nos. Nine and Ten, Appellant complains of introduction of extraneous offenses concerning two other female students of the Appellant, relying exclusively upon the Court of Criminal Appeals' opinion in *Boutwell v. State,* 719 S.W.2d 164 (Tex.Crim.App.1986). As reflected in Judge Davis' opinion on rehearing in *Boutwell,* the extraneous offense rule derived from *Battles v. State,* 63 Tex. Crim. 147, 140 S.W. 783 (1911), is not a limitation upon the exceptions exemplified in *Albrecht v. State,* 486 S.W.2d 97 (Tex. Crim.App.1972). Rather, it established a separate exception for prior sexual misconduct between the same defendant and the same child victim, to enable the jury to assess the indicted misconduct in the context of an ongoing relationship between the two participants—in effect an extended form of res gestae analysis. *Boutwell,* 719 S.W.2d at 174–175. In succeeding cases, traced by Judge Davis, the probative pur

poses behind the *Battles* exception have included: (1) proper contextual consideration of the indicted act; (2) demonstration of an unnatural attention toward the single child on the part of the defendant and (3) proof of the probability of the act. *Boutwell*, 719 S.W.2d at 176. Cases suggesting an extension of the exception to encompass extraneous offenses involving third parties was found in *Boutwell* to constitute impermissible "propensity" evidence which the basic extraneous offense rule is intended to preclude. Hence, to that extent, *Boutwell* overruled *McDonald v. State*, 513 S.W.2d 44 (Tex.Crim.App.1974) and *Johnston v. State*, 418 S.W.2d 522 (Tex.Crim.App.1967). *Boutwell*, 719 S.W.2d at 176–179.

It did not, however, overrule *Johnston* and *McDonald* type extraneous offenses which could be qualified under other exceptions such as those suggested in *Albrecht*. *Boutwell*, 719 S.W.2d at 179. If the present case simply presented an attempt by the State to elicit propensity evidence, the present complaints would be meritorious. That, however, is not the case.

■ The two extraneous offense witnesses were called as rebuttal witnesses by the State. It is apparent from the record that their testimony was properly introduced to impeach testimony given by the Appellant. *Boutwell* itself sanctions impeachment of defensive assertions that a "defendant was a church-going, hardworking man, and therefore unlikely to commit the charged offense." *Boutwell*, 719 S.W. 2d at 179. In Appellant's direct testimony, he detailed his military and academic record and his family status. He further stated:

> I am much interested in health. I have worked with two small clinics in El Paso, La Fe Center. I was chairman of the board at La Fe several years and recently, I helped organize and develop Strofo Medico Del Villa Facility for primary health care. I helped write the proposals for both clinics. I am also involved in my church. I am a lay lector at Our Lady of the Valley. Once in a while, I help in giving the host.

This falls within the precise example in *Boutwell*. At the close of direct examination, Appellant was asked by his attorney if he had ever done anything to sexually arouse the complainant. He responded, "[t]here was *never anything like that* in my classroom." The breadth of the response was sufficient to convey an impression to the jury ripe for extraneous offense rebuttal by the State. The answer was perfectly analogous to the typical overbroad assertion of "no trouble with the law" which so often exposes a defendant to impeachment with prior arrest, short of conviction, which but for his own words would not be admissible. We find these passages sufficient to support the extraneous offense evidence without becoming embroiled in the Appellant's cross-examination, with attendant issues of the State perhaps seeking to open its own door to impeachment. We do, however, point out that on cross-examination, Appellant conceded that touching may have occurred with the complainant and other students, but was either inadvertent or initiated by the student, and was definitely non-sexual. The extraneous offenses were certainly probative as impeachment with regard to intent and initiation. *Boutwell*, 719 S.W.2d 179.

Finally, we turn to the common scheme or design exception specifically addressed by Judge Duncan in the *Boutwell* rehearing. Mindful of his admonition of too cursory and casual an application of the exception, we find it appropriate to the case before us. Recognizing that whether the issue be one of identity (not present here) or common plan or scheme, we have reviewed the evidence to determine whether there is a sufficient degree of congruity between the indicted and extraneous offenses to conclude that we are not faced merely with propensity evidence but rather probative, explanatory evidence of a material element of the indicted case. In other words, borrowing Judge Duncan's phrasing, do the extraneous offenses illuminate "steps taken toward the accomplishment of a plan" or "individual manifestations of a

general plan." *Boutwell,* 719 S.W.2d at 181. We find that they do.

Appellant suggests that the end results alleged with these three children differed to an extent precluding probative use of the extraneous offenses. With this complainant, the ultimate act was genital touching. With the extraneous witnesses, it was touching the buttocks and kissing, with insertion of Appellant's tongue in the child's ear. Extraneous offenses utilized to establish identity may require greater consistency not only as to precise end result but also as to manner and means of achievement. With regard to common plan or scheme, such distinctions are not mechanically determinative of the applicability of the exception. The question is whether, considering similarities and distinctions, both the indicted and extraneous offenses can be logically related to a central plan, scheme or motivation. A series of different suboffenses may be components of a greater central, ultimate offense, while a series of virtually identical offenses may be merely repeated, isolated instances of a criminal propensity. Thus, despite the differences noted by Appellant, in this case, the indicted and extraneous offenses are all connected to a common criminal scheme of progressively exploiting the student-teacher relationship with elementary school female students, while in a setting dominated by the Appellant, to physically achieve Appellant's own sexual gratification.

The complainant in this case testified not only to the indicted incident but to a series of prior offensive touchings leading up to the March 9 incident. At that time, she was a seven-year-old student in Appellant's Spanish class. The two extraneous offense witnesses were nine and ten at the time of the incidents that they related and were also former Spanish students of the Appellant. The indicted and extraneous offenses all transpired in the same type of classroom setting. They all depict an exploitation of the teacher-student relationship, utilizing proffered or requested assistance on school work as an opportunity for physical proximity, which in turn led to progressively more intimate physical contact with the children.

We conclude that the extraneous offense evidence was admissible both for impeachment of Appellant's testimony and as proof of a common criminal scheme. Points of Error Nos. Nine and Ten are overruled.

The judgment is affirmed.