Donald **VERNON**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–90–191–CR.

Court of Appeals of Texas, Fort Worth.

Aug. 21, 1991.

Rehearing Overruled Sept. 24, 1991.

Minor & Jester, Tom D. Jester, Jr., Denton, for appellant.

Bruce Isaacks, Dist. Atty., Kathleen A. Walsh, Vicki Foster, Asst. Dist. Attys., Denton, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

FARRIS, Justice.

Donald Vernon was convicted for the aggravated sexual assault of a child, his stepdaughter, and sentenced to life in prison. He appeals with three points of error asserting: (1) the evidence was insufficient to prove there was penetration of the sexual organ of his stepdaughter; (2) the trial court erred in allowing into evidence extraneous offenses which allegedly happened years before and a short time after the alleged incident; and (3) the trial court erred in allowing a doctor to testify regarding his examination of the child and in admitting the pictures the doctor took of her. We find the evidence was sufficient to support the conviction, and that the trial court did not abuse its discretion in admitting that evidence of which Vernon complains. The conviction is affirmed.

The indictment alleged that Donald Vernon, in the County of Denton, State of Texas, on or about the 15th day of October, 1989, intentionally and knowingly caused the penetration of the female sexual organ of K___ D___ with his finger. Vernon claims in his first point of error that the evidence was insufficient to prove actual penetration. In our review of the evidence, we must view it in a light most favorable to the verdict. *See Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App.1989). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have believed the element established beyond a reasonable doubt. *Id. citing*

*Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) We hold that such a finding is possible. K___ D___ testified that at the time in question, Vernon took her into the bathroom at their home, told her to pull down her shorts and underwear, and to get up on the bathroom counter. Although she testified that he touched the outside of her vaginal area with his hands, she further testified that she felt some pain, discomfort, and pressing in the vaginal area but could not describe where. K___ D___ was not required to be able to testify as to penetration, as this may be proved by circumstantial evidence. *See Nilsson v. State,* 477 S.W.2d 592, 595–96 (Tex.Crim.App.1972). Here, the State offered the testimony of Dr. Gerard Balsley who examined K___ D___ on October 27, 1989. He testified to, and pictures were admitted which depicted, a healing laceration within the female sexual organ. He testified that this tear was at least ten to fourteen days old and was consistent with penetration of the sexual organ by a finger. This testimony would relate that injury back to the date alleged in the indictment, October 15, fourteen days prior. As no other evidence was offered that contradicted K___ D___'s or Dr. Balsley's testimony, we hold that a reasonable trier of fact could have found the essential element—penetration—beyond a reasonable doubt. Vernon's first point is overruled.

■ Vernon next complains that the trial court erred in allowing testimony of extraneous offenses which allegedly occurred years before and a short time after the alleged incident for which he was on trial. Again, we disagree. K___ D___ testified that Vernon fondled her while she was in the second, fourth, fifth, sixth, and ultimately the seventh grades. (Note: K___ D___ did not use the word "fondle," rather she stated that Vernon would kiss her breasts, rub her vaginal area with his hand and sometimes his penis and mouth, and that he would require her to do the same, rub his penis with her hand and mouth.) Nothing happened while she was in the third grade because during that time K___ D___'s mother was separated from Vernon. While these incidents are extraneous to the one alleged in the indictment, they are not extraneous to each other and we will not consider them to be so. The incident that Vernon was charged for did not occur in a vacuum; it was but one point of an ongoing crime against his stepdaughter. Had Vernon instead robbed a bank, evidence of the five years he had spent planning the crime and preparing for it would certainly be admissible; we hold that it is a like concept.

K___ D___'s testimony of the prior occurrences served to place the crime within the proper context and shed light upon this unnatural relationship between her and her stepfather. *See Boutwell v. State,* 719 S.W.2d 164 (Tex.Crim.App.1985). While the court in *Boutwell* found that no continuing scheme or plan existed, the facts of this case are significantly different. In *Boutwell,* there was no familial relationship between Boutwell and the fifteen-year-old complainants, nor was there an ongoing crime against them. There was evidence that the boys voluntarily went to the home of Boutwell or one connected with him and in the past had engaged in consensual intercourse with the appellant's friends. In our case, however, the appellant was K___ D___'s stepfather, who was in a position of authority over her. The incidents began occurring when K___ D___ was seven or eight years old and she did not consent but was threatened by her stepfather. Further, as K___ D___ grew older, Vernon's actions became more involved: paraphrasing K___ D___'s testimony, Vernon started out just touching her vaginal area and breasts with his hand, and then also with his penis and she would have to touch his penis with her hands and mouth; later he would rub her vaginal area with his penis and "play" with her breasts; and as she got older he started kissing her and would "play" around with her vaginal area with his hands, penis, and mouth, and ultimately he caused the action which is the issue here, he penetrated her vaginal area with his fingers. There was evidence that had K___ D___'s mother not found out about the abuse, it would have continued. In *Boutwell,* the court stated that a series of

similar acts are not enough to show a common plan or design; the added element must be such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are individual manifestations. *Id.* at 181. We hold that the evidence of Vernon's actions show that they were individual manifestations of the growing abuse of his stepdaughter and therefore, were admissible.

■ Vernon further asserts that the prior actions were not admissible because he never denied the act or tried to impeach the witness and he cites *Boutwell* for support. *Id.* at 178. While *Boutwell* did establish that these actions could trigger the admission of prior and extraneous offenses, *Boutwell* also upheld and recognized the validity of the "res gestae" or context exception as established in *Battles v. State,* 63 Tex.Crim. 147, 140 S.W. 783 (1910), and *Johns v. State,* 155 Tex.Crim. 503, 236 S.W.2d 820 (1951), stating that "[p]articularly in cases involving minors, such evidence can aid the jury in properly evaluating the 'inherently questionable testimony of a minor against an adult responsible for his welfare' or in a position of authority and control over the minor." *Boutwell,* 719 S.W.2d at 178–79. In *Johns,* the defendant neither testified, nor attempted to impeach the complaining witness, but the court found the failure to deny the charged act would not limit the State in its presentation of the facts pertinent to the issue, especially by virtue of the fact that a plea of not guilty had been entered by the appellant. *Johns,* 236 S.W.2d at 824. The court stated the appellant's plea put a duty on the State to prove its case, and "[a]ny act or declaration of defendant tending to show a desire or purpose on his part to have illicit relations with the prosecutrix or any solicitation or representation made by him to excite a similar desire on the part of his victim, or to overcome her natural aversion to wantonness, would be relevantly and clearly connected with the crime and therefore admissible." *Id.* at 823, quoting from *People v. Scott,* 24 Cal.App. 440, 141 P. 945 (1914), as set forth in *White v. State,* 137 Tex.Crim. 481, 131 S.W.2d 968, 969

(1939). We hold that the actions which occurred prior to October 15, and which Vernon objected to, showed just what the *Johns'* court contemplated, a "purpose" or continuing plan to have illicit relations with his stepdaughter, and therefore, the evidence was not only admissible, but was not to be considered extraneous because they were part of the ongoing crime itself.

■ The offense which occurred after the October 15th incident and which Vernon also claims was extraneous happened in Waco during the following weekend. Again, this offense was not used to prove the character of Vernon or to show he acted in conformity with that character. Texas Rules of Crim. Evidence 401 and 404(b) express that evidence may be introduced where it logically serves to make more probable or less probable an elemental fact; an evidentiary fact that inferentially leads to an elemental fact; or defensive evidence that undermines an elemental fact. TEX.R.CRIM.EVID. 401 and 404(b) and *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990) (opinion on court's own motion for reh'g). Among a history of abuse, the Waco incident was easier for K___ D___ to remember because of the circumstances, and it was what she used to relate back to the incident in question. It was also not until after this incident that her abuse was detected and she was taken to Dr. Balsley who examined her and found the two-week-old laceration, proof of the crime alleged in the indictment. The Waco incident had an inherent probativeness and was needed by the State in order to prove its case. *Id.* Because there is no showing that the trial court abused its discretion in allowing into evidence the events which Vernon claims were extraneous, point two is overruled.

■ Vernon's third point of error again complains about the testimony of Dr. Balsley and the pictures which were admitted into evidence during the doctor's testimony. Vernon asserts that the doctor did not examine K___ D___ until after the Waco incident, for which he was not on trial, and therefore his testimony concerned an extraneous offense. He also asserts

that the pictures were only intended to inflame and unfairly prejudice the jury. We overrule this point because, in fact, Dr. Balsley never testified about what did or may have occurred during the Waco incident, and specifically stated that K____ D____ had not told him of the Waco incident. Rather, he explained his examination, the laceration he found, and that this laceration would have occurred from ten to fourteen days prior to his examination. His findings related back to the October 15th incident and not to the Waco incident which had occurred only a few days before. Additionally, the photographs admitted depicted the tear in K____ D____'s vaginal area, exactly what Dr. Balsley verbally described. The general rule for admission of photographs is that if it is competent, material, and relevant to the issue on trial it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury; and if a verbal description would be admissible, then a photograph depicting the same is admissible. *Lucas v. State*, 791 S.W.2d 35, 55 (Tex.Crim.App.1989), and *Martin v. State*, 475 S.W.2d 265, 267 (Tex.Crim.App.), *cert. denied*, 409 U.S. 1021, 93 S.Ct. 469, 34 L.Ed.2d 312 (1972). In this case, the photos and verbal testimony were necessary to prove an essential element of the case, the penetration of the sexual organ, and were admissible. Point three is overruled.

Vernon's conviction is affirmed.