**Jerry CREEKMORE, Appellant,**

v.

**STATE of Texas, Appellees.**

No. 04–89–00600–CR.

Court of Appeals of Texas,
San Antonio.

April 30, 1993.

Opinion on Motion for Rehearing
en banc July 28, 1993.

Cecil W. Bain, Law Offices of Cecil W. Bain, P.C., George Scharmen, San Antonio, for appellant.

Dib Waldrip, Asst. Dist. Atty., Karnes City, for appellee.

Before REEVES, C.J., and BUTTS and RICKHOFF, JJ.

## OPINION

RICKHOFF, Justice.

Appellant, Jerry Creekmore, was convicted by a jury of the offense of indecency with a child. Punishment was assessed at ten years

confinement. On appeal, appellant raises five points of error. We affirm.

The ten-year-old complainant sought to cry out the offense of sexual abuse by her stepfather to her school counselor in Floresville, Wilson County, Texas, by placing two notes in the counselor's school mailbox. Summoned to the counselor's office, the child told the counselor that two weeks before the initial outcry appellant sexually abused her and that the abuse had occurred on a regular basis in the past. The child described the abuse in detail and testified it occurred after school in either the child's or appellant's bedroom.

Point of error one complains that venue was not demonstrated sufficiently. The complainant clearly indicated the offense took place in her home, in Floresville, two weeks prior to her report to her counselor at school in Floresville and the Department of Human Services worker testified that the appellant and complainant lived in a trailer at 501 Goliad Rd., Wilson County, State of Texas. Venue is sufficiently established from the record. The point of error is overruled.

Next, appellant complains that the trial court erred in overruling his motion to dismiss because of former jeopardy. This court previously considered this issue by way of an interlocutory appeal from the trial court's order overruling an application for writ of habeas corpus on the grounds that appellant was denied "his rights under the United States Constitution and under 'Article I, section 14 of the Texas Constitution.'" In Cause No. 04–89–00403–CV, this court denied relief on August 8, 1989, for lack of jurisdiction.

The first trial began on June 12, 1989. The second trial began on August 21, 1989. In the first trial appellant requested and was granted a mistrial during the testimony of the first witness. Pretrial motion rulings will not be reversed unless there is a clear abuse of discretion, and in this context, facts presented that demonstrate that reasonable minds could not disagree as to the cause of the mistrial—that is, the identified intentional misconduct of the prosecutor. *See Jacobs v. State*, 787 S.W.2d 397, 400 (Tex.Crim.

App.), *cert. denied*, 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990).

Appellant states he was required to request a mistrial because the prosecutor violated the court's order to disclose "certain very important information regarding multiple offenses and multiple outcries by the complainant." No findings on the disputed fact issues were made or requested. The complainant during the first trial testified about leaving the two notes and then about sexual abuse which began about four years prior. The defense objected alleging surprise and prejudice and moved for a mistrial, which was granted. Appellant admitted to receiving discovery information that included allegations of previous abuse by this victim. The counselor testified the prosecutor asked her for the notes but she could not locate them in the school files so she could not furnish them to the prosecutor. The appropriate standard of review is set forth in *Sanders v. State*, 801 S.W.2d 955 (Tex.App.— El Paso 1990, pet. ref'd), as to when alleged intentional misconduct of the prosecutor constitutes the functional equivalent of an intent to provoke a mistrial. We cannot deduce from a close reading of this record such intentional prosecutorial misconduct. This point of error is overruled.

In the third point of error appellant complains that the trial court failed to submit his plea of former jeopardy to the jury. The record, however, shows that the plea, though filed, was not verified, that no evidence was submitted to the jury in support of the plea, that no submission was sought and that no objection to its absence from the charge was made. These failures and appellant's failure to comply with Texas Code of Criminal Procedure articles 36.14 and 36.15 prevented his special plea from being heard by the trier of fact in accordance with article 27.07. *See* TEX.CODE CRIM.PROC.ANN. arts. 36.14, 36.15 (Vernon 1981 and Supp.1993) and art. 27.07 (Vernon 1989).

Point of error four complains of the admission of "third party extraneous offenses concerning appellant in violation of rule 404(b), Texas Rules of Criminal Evidence." *See* TEX.R.CRIM.EVID. 404(b). In rebuttal, prosecutors produced three witnesses who testi-

fied they were about the same age as the complainant and in the appellant's care when he sexually abused them in the same way. Defense objected "not only under Rule 608[1] and the *Boutwell*[2] theory, but on objections that these are going to be remote, going to prevent the Defendant from conducting cross examination on the basis that we are not prepared and asking for a continuance to defend and cross examine these witnesses?" The objection was overruled.

The first witness was appellant's daughter who testified her mother was in the hospital having another baby when her father took her in a bedroom and "made me take his pants down, and he had an erection and he made me touch his penis and he proceeded to ejaculate in front of me." She never told anyone until she was seventeen when she told the man who is now her husband. On cross-examination she admitted this was not the only time appellant abused her.

The next witness was appellant's niece. She testified when she was eight or nine appellant was living behind her grandfather's house in an apartment. When visiting, appellant would pick her up and "his hand went up and under my panties, and he fondled my private area." On another occasion appellant "came home unexpectedly and caught me in the house in the restroom by myself ... I was in the process of pulling my shorts, or my underwear, or whatever I had on at the time, up, and he pulled them down and fondled my private parts and pulled my shirt up and fondled my breast." She never told anyone till the second or third year of her marriage. On cross-examination she said,

> I volunteered to help in any way that I could to get this stopped because I know what it did to my life ... in a child's mind, my mind, I assumed that I was doing something, that I just didn't know why it was happening to me because I assumed that it never happened to anybody else in the world.

She admitted she never confronted the appellant about this because she was terrified of him.

The third witness was another niece who testified she was eight when she returned to the States with her missionary parents for a reunion with the family. Appellant, "would attempt to get me in a corner or out of the house, or somewhere, and he would proceed to kiss me and fondle my breasts, or take my hands and cause me to fondle him, and this type of thing." When she was seventeen she told her mother.

These rebuttal witnesses appeared after the victim's testimony was challenged by: suggesting she was jealous; that she told lies; that her testimony was contradicted by defense witnesses; suggesting the child's mother was lesbian; that the child and her mother watched x-rated movies; that mother and child touched each other in sexual ways and numerous other suggestions of general immorality all leading to the general premise that this was a plot against the appellant because he was a disciplinarian. Appellant's parents testified their son would never sexually abuse children. They also testified the victim viewed dirty magazines, talked about a sex act and was caught with her hands down the pants of a mentally retarded child.

Appellant then testified and denied the allegations and reviewed the moral attack on the child and mother. Dr. Judith Craig, a clinical psychologist, was allowed to view the testimony and testified as an expert on sexual abuse of children. She testified appellant did not fit her profile of an abuser, that "there is very strong reason to doubt that" he abused the child, and that in her opinion there "is great reason to doubt" the victim. Finally, on cross-examination, the doctor was asked, "... [D]id you interview Mr. Creekmore with regard to whether or not he was a pedophile"? The expert answered, "He says he is not. He says he has never sexually molested anyone." The prosecutor then repeated the answer and again the summary expert witness repeated, "He said he has never sexually molested anyone, yes." Later she stated she had no reason to doubt him because his lie scale on the testing was not elevated and his behavior and demeanor did

---

1. Tex.R.Crim.Evid. 608.

2. *Boutwell v. State,* 719 S.W.2d 164 (Tex.Crim. App.1989).

not suggest lying. But she also stated that the child should be doubted because of her demeanor, including being too calm and not crying.

The trial court's discretion to admit evidence should not be disturbed absent clear abuse of discretion. The most precise guidance on the application of the standard of review in the context of Tex.R.Crim.Evid. 404(b) and 403 in cases involving the sexual abuse of children is found in Judge Clinton's opinion in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990), decided after this trial. He states that:

> the trial court must be given wide latitude to exclude, or, particularly in view of the presumption of admissibility of relevant evidence, not to exclude misconduct evidence as he sees fit. So long as the trial court thus operates within the boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be.
>
> The process cannot be wholly objectified. Reasonable men may disagree whether in common experience a particular inference is available. Where there is room for such disagreement, an appellate court that reverses a trial court's ruling on relevancy accomplishes nothing more than to substitute its own reasonable perception of common experience for that of the trial court. The appellate court effectively displaces the trial court, commandeering a function institutionally assigned elsewhere.

*Id.* at 390.

In his concluding paragraphs, however, Judge Clinton finds he is able to commandeer this function when he balances inherent prejudice and probativeness. He decided in *Montgomery* that appellant's behavior of frequently walking naked, with an erection, in front of his children was of marginal value and unfairly prejudicial because sexually related misconduct with children is "inherently inflammatory." Judge Clinton then suggests that some in our society, presumably including Texas jurors and other members of the judiciary, might consider this "an undifferentiated sexual arousal imprudently displayed,

or simply an incidental erection coupled with a damnable nonchalance." After this euphemism he suggests, "jurors may have lost sight of specific issues ... and convict out of revulsion." It is not the jurors who have lost sight of the issue, but it is the juror who is in need of the insight the examples of sexual behavior directed toward children by defendants can provide in order to overcome their reluctance to recognize this otherwise unimaginable parental crime. In the case before us the rebuttal evidence of appellant's daughter and two nieces as to the abuse they suffered appeared only after the victim and her supporting witnesses were severely challenged, and, more determinatively, after appellant's expert on child abuse provided her additional verification for his statement, made to the jury through the doctor, that he never before molested anyone. In *Townsend v. State*, 776 S.W.2d 316 (Tex.App.—Houston [1st Dist.] 1989, no pet.), the court allowed the six-year-old allegations of sexual abuse of two other children as rebuttal after that appellant's expert also related his opinion that appellant did not fit the profile of an abuser. The court held the appellant by his own testimony and that of his expert had "opened the door" to sexual abuse that had been committed in a similar way. Finding the extraneous offense rebuttal evidence relevant to a material issue, we find the court did not abuse its discretion in weighing inherent value and prejudicial potential.

### The Victim Group [3]

Trial courts are increasingly challenged with this same application of Rule 404(b) to alleged pedophilic behavior and find themselves resolving issues in favor of the admissibility of extraneous acts of sexual abuse to children in spite of ever clearer holdings to the contrary by the Texas Court of Criminal Appeals. An additional logically sound exception is necessary.

Where a parent or one in *loco parentis* is accused of abusing a child in their care, control, or protection, the *Montgomery* reasoning is expanded so as to allow for the

---

**3.** The content of this section borrows liberally from the brief of Angela Moore, Ass't. Crim. Dist. Atty., Bexar County, Texas, filed in other cases found to be persuasive.

admissibility of extraneous acts of abuse by the accused upon other children of the "victim" group. This group will be defined and discussed in more detail below.

Effective September 1, 1986, prior to this or the *Montgomery* trial, the Texas rules of criminal evidence became the most important guide to admissibility of extraneous conduct. While omitting the historical exceptions, the rule retains an inviting "such as" before the eight enumerated exceptions. After 1986, prosecutors still had to show extraneous misconduct was relevant as an "elemental fact or an evidentiary fact of consequence to determination of the action." *Vernon v. State,* 841 S.W.2d 407, 411 (Tex.Crim.App.1992); *Montgomery,* 810 S.W.2d at 387–88. The *Vernon* court found because appellant did not cross examine any of the prosecution's witnesses or tender any witnesses of his own and therefore did not impeach complainant that it was error for the trial court and court of appeals to conclude that appellant's previous history of abusing his child was an "unnatural relationship" relevant to the issues tried. The message to the defense becomes that when defending pedophiles, defense counsels must lay down during the case-in-chief and not present witnesses in order to be safe from hearing of their client's previous similar behavior. A rule allowing victim group extraneous offense testimony in sexual abuse of children cases allows the defense to be free of this restriction and challenge all witnesses' credibility and motivations. Medical experts and criminologists have long known that fixated, chronic pedophiles recidivate and the most relevant predictor of their current and future behavior is their past behavior. Pedophiles are not always fixated. Like other behavioral abnormalities, the behavior takes different forms in different people as the expert in this case explained. She testified, "many pedofiles have a particular age of child that they enjoy molesting ... Other pedofiles have what is called a polymorphis perversion sexuality, which is a way of saying that they will be sexual with any kind of infant." For a fixated pedophile there is no effective treatment and confinement only removes them from the occasion of crime. Rule 404(b) is the most illogical response to pedophilic behavior and courts will continue

to suffer frustration as they encounter these fact patterns until they realize that extraneous sexual behavior directed toward children is the best evidence of pedophilic behavior and not evidence of character as the rule was meant to envision.

However, we still have the *Vernon* holding that the evidence must be relevant to some material issue other than credibility. The logic lapse there is that character is always in issue when one is charged with sexually abusing children in their care.

Another court of appeals has embraced the import of this category in examining the admissibility of extraneous acts between the defendant and a third party, during the guilt/innocence stage of trial. In *Mares v. State,* 758 S.W.2d 932 (Tex.App.—El Paso 1988, pet. ref'd), the court acknowledged the admissibility of acts of the defendant upon other female students, where the defendant was charged with fondling a female student, even though identity was not an issue. There the court held:

> the indicted and extraneous offenses are all connected to a common criminal scheme of *progressively exploiting the student-teacher relationship with elementary school female students, while in a setting dominated by the Appellant, to physically achieve Appellant's own sexual gratification.*

*Mares v. State,* 758 S.W.2d at 937 (Emphasis added).

Although the court applied a different label to the acts in *Mares,* the logic is sound. It is readily apparent that courts of appeals, whether relying on other "exceptions" or simply applying different labels to the evidence, have exhibited an awareness and an acceptance of the need to apprise the jury of the other acts by the accused upon other children similarly situated in the accused's care or control. *See e.g., Morgan v. State,* 816 S.W.2d 98, 105 (Tex.App.—Waco 1991, no pet.); *Vernon v. State,* 814 S.W.2d 845, 848 (Tex.App.—Fort Worth 1991, no pet.); *Williams v. State,* 732 S.W.2d 762 (Tex. App.—Beaumont 1987, no pet.); *Wilson v. State,* 730 S.W.2d 438 (Tex.App.—Fort Worth 1987, pet. ref'd); *Kester v. State,* 636

S.W.2d 232 (Tex.App.—El Paso 1982, no pet.) Moreover, in presenting evidence by the State to prove that the act occurred between the parent and the child, to isolate the jury to a single incident, and not to other members of the victim group would be to leave the jury without the most logically relevant evidence available. In the case before us the rebuttal witnesses could not reveal the abuse until adulthood. Courts should recognize the implications of this delay for society's weakest, most vulnerable members. Public policy requires that the state protect itself by safeguarding children.

The Texas Rules of Evidence sets out in Rule 102:

> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

TEX.R.CRIM.EVID. 102.

This Court acknowledges the sound rule regarding the inadmissibility of propensity evidence in most situations. For example, to prove an accused had stolen a car, it would be unduly prejudicial to introduce evidence that he had smoked marijuana or struck his wife. To introduce such evidence would be to determine guilt based simply on propensity evidence.

However, the narrow area of abuse of children by a parent, or someone, almost always a male, in loco parentis requires a different analysis. A child's credibility is always suspect, due to their limited communication skills, memory, and sophistication in general with the world. It is this innocence and dependence on adults which creates the protection of the adult parent or authority figure from discovery. As the evidence shows in this case the children often cannot even conceive why this is occurring to them so they do not seek assistance. The child is dependent on this adult for care, protection and other needs.

For example, if a child was assaulted by a stranger in a park, the child is much less likely to remain silent as to the act or the perpetrator. However, in situations where the victim is a child, and the perpetrator of the assault is a parent, whether biological or by marriage or by situation (as with live-in companions of a parent or another family member), or one in authority over the child (such as a teacher, scout leader, doctor, babysitter), the child victim is much more likely to remain silent due to the influence of the adult over the child and the helplessness of the child in that situation. The helplessness of the child is magnified when outcry has been made to another parent or authority figure and the child is not supported for whatever reasons.

Oftentimes the parent/authority figure abuser has access to other children which the abuser can dominate. This victim "group" may consist of the other siblings or other children within the extended family unit, the school class or scouting group, to which the abusing adult has privacy, influence by reason of authority, and absence of other adults. It is this group that requires particularized protection.

### Abused Children as a Victim Group Have Been Recognized as Deserving of Special Protections

Victims as a group in general have been recognized as requiring more protection within the parameters of the criminal justice system. The Texas Legislature responded to the growing urgency of stronger victims rights by passing TEX.CODE CRIM.PROC.ANN. arts. 56.01–56.10 (Vernon Supp.1993). Article 56.02 of the Texas Code of Criminal Procedure is the portion which creates the Crime Victim's Rights. Article 56.02 was enacted through House Bill 235 of the 69th Legislature, ch. 588, § 1 of the Texas General Session Laws. The bill analysis of the House Committee on Criminal Jurisprudence, describes the purpose of the bill, which created other statutes in addition to Article 56.02: "This bill would provide certain rights to victims of sexual assault and bodily injury crimes and to families of victims who have died as a result of criminal offenses. These rights include the right to be informed, to be heard, and to be protected." HOUSE COMM. ON CRIMINAL JURISPRUDENCE,

BILL ANALYSIS, Tex.H.B. 235, 69th Leg., R.S. (1985).

This bill analysis summarizes the arguments of the bill's supporters:

> For too long, the victims of crime have been left out of the criminal justice process. They are often regarded as mere witnesses of the state or simply as troublesome spectators. this attitude gives an increasing number of victims and their families the impression the state is *more concerned with the rights of the criminal than with those of the victim.*

> \* \* \* \* \* \*

*Id.* (emphasis added).

The Texas Constitution was also amended to contain similar provisions including TEX. CONST. art. I, § 30(c) & (d) which provides:

> (c) The legislature may enact laws to define the term "victim" and to enforce these and other rights of crime victims.

> (d) The state, through its prosecuting attorney, has the right to enforce the rights of victims.

The House Research Organization bill analysis of the constitutional amendment, states in the digest portion, in pertinent part:

> This proposed constitutional amendment, similar to the one enacted in Michigan, would serve to enlighten the public about the purpose and nature of the criminal justice system. When coupled with the Crime Victims' Bill of Rights that was enacted by the 69th Legislature, this amendment and its implementing legislation would finally address *the plight of the innocent.* Adoption of this proposal was one of the recommendations of the House Select Committee on Sentencing and Recidivism, which said victims need a set of rights in the law analogous *to those accorded criminal defendants.* (emphasis added).

HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, H.J.R. 19, 71st Leg., R.S. (1989).[4]

The Court of Criminal Appeals and this court have found previously that child victims

of abuse are of special interest. In *Gonzales v. State,* 818 S.W.2d 756 (Tex.Crim.App. 1991), the court, relying on this court's opinion and the United States Supreme Court, held that allowing a traumatized seven year old sexual abuse victim to testify by the use of two way closed circuit television adequately protected the defendant's confrontation rights under the State and Federal Constitutions. In that opinion the Court of Criminal Appeals quoted extensively from *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). There, a pertinent portion of the Court's opinion is as follows:

> Given the State's traditional and transcendent interest *in protecting the welfare of children and buttressed by the growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court,* we will not second guess the considered judgment of the Maryland Legislature regarding the importance of its interest in protecting child abuse victims from the emotional trauma of testifying.

> \* \* \* \* \* \*

*Gonzales v. State,* 818 S.W.2d at 761 citing *Maryland v. Craig,* 497 U.S. at 855–56, 110 S.Ct. at 3168–3169.

The Court also relied on prior decisions of the United States Supreme Court in finding:

> "the expressed affirmation and reaffirmation by the judiciary of this State and the United States that the protection of children is a legitimate and compelling state goal," *See New York v. Ferber,* 458 U.S. 747, 756–757, 102 S.Ct. 3348, 3354–3355, 73 L.Ed.2d 1113 (1982) (state interest in safeguarding the physical and psychological well being of a minor is compelling); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) (state interest in safeguarding protection of minor victims from further trauma); *FCC v. Pacifica Foundation,* 438 U.S. 726, 749–750, 98 S.Ct. 3026, 3040–3041, 57 L.Ed.2d 1073 (1978) (government interest in well-being of its youth); *Ginsberg v. New York,* 390 U.S. 629, 640, 88 S.

---

4. This court has reviewed and interpreted this amendment to the Texas Constitution and its enabling legislation on a previous occasion in *State of Texas Ex Rel. Steven C. Hilbig v. Honorable Terry McDonald,* 839 S.W.2d 854 (Tex. App.—San Antonio 1992).

Ct. 1274, 1281, 20 L.Ed.2d 195 (1968) (state has interest in the welfare of children and safeguarding them from abuses); *Prince v. Massachusetts*, 321 U.S. 158, 168, 64 S.Ct. 438, 443, 88 L.Ed. 645 (1944) (state may secure against dangers to children). *See also Duckett v. State*, 797 S.W.2d 906, 716 n. 15 (Tex.Crim.App.1990).

*Gonzales v. State*, 818 S.W.2d at 766.

In conclusion, while the trial court's inclusion of this rebuttal testimony is sustainable otherwise, this court finds that under the limited fact situations where as parent or one in *loco parentis* is accused of abusing a child in their care, control or protection, the *Montgomery* rule is expanded so as to allow for the admissibility of extraneous acts of abuse by the accused upon other children of the "victim" group.

We adopt this victim group expansion to the rule precluding extraneous offenses because the current rule as interpreted is not a logical restriction in trials involving incestuous pedophilia. These trials are a fast growing segment of our jury trial docket and the principal vehicle for reviewing extraneous act issues. Each case invariably includes the same cast; the dependant, passive, often unsupporting mother; her invincibly innocent child; the abusive male who violates his status as a protector; and the rebuttal witness who was previously abused and once shared the complainant's status.

Judge Clinton, writing for the majority on rehearing in *Montgomery*, acknowledges the need for a precise, easy-to-apply exception when he identifies a need to counteract a perceived societal aversion to the notion that parents or others, perceived by the victim child to be in *loco parentis*, would actually commit sex crimes against these children. He also acknowledges that sexual crimes against children naturally occur in secrecy and the child, if they come forward, is the only witness and so their credibility is subject to question. Similar misconduct by the accused may well shore up the testimony of the child if it in logic shows a lascivious attitude and a willingness to act on it that a jury might otherwise be loathe to attribute to a parent figure toward his child. *Id.* at 394. To decide otherwise would be to restrict trial courts from allowing the most logical and relevant testimony possible, the testimony of the victimized children, while encouraging the expanded use of secondary evidence ... expert witness opinions.

■ Appellant next complains he "was denied his right of due course of law in violation of Article 1 section 13 and 19 of the Texas Constitution" because a discovery request previously granted by one judge was not satisfied to his satisfaction and the next trial judge denied his continuance and "revoked Judge Eschenburg's previous discovery order ... and admitted evidence over Appellant's objection which had been covered by the discovery order." Appellant's brief fails to particularize the information sought, allege how he was harmed, or how the outcome of the trial would have been affected. Discovery is discretionary. *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim.App.1980).

■ In the final point of error appellant contends the trial judge should have allowed him to ask his expert whether another expert, who prepared a report, had stated an opinion as to the validity of the charges. This admissibility question was also within the sound discretion of the trial court and will not be reversed unless it affects the substantial rights of the accused. No such demonstration having been made this point is overruled.

The judgment is affirmed.

BUTTS, Justice, concurring in result.

I concur in the result. Appellant complains about the admission of testimony of his earlier sexual assaults against children, clearly extraneous offenses. The trial court did not err in admitting the rebuttal evidence.

Since long before the passage of the Texas Rules of Criminal Evidence, trial courts have allowed such evidence, not otherwise admissible, when "the door was opened" by direct defense testimony. That is still the law.

The majority opinion sets out in detail how the evidence door was clearly opened by appellant to authorize exactly the kind of rebuttal testimony which now plagues him. A telling "door-opener" was the testimony of

the psychologist who quoted appellant's absolute denial to her that he was a pedophile: "He says he is not. He says he has never sexually molested anyone." Appellant testified and denied committing the charged offense. His parents denied that he would ever sexually abuse children. The direct evidence presented by appellant purports to show that he not only did not commit the act charged, but that he never had engaged in this kind of proscribed act (sexual abuse of children), and, further, that he was the victim of a conspiracy of the complaining witness and her mother, pictured as moral degenerates.

The State was entitled to impeach the defense witnesses' evidence by introduction of the extraneous offenses. *See McIlveen v. State,* 559 S.W.2d 815, 822 (Tex.Crim.App. 1977). See also *Bell v. State,* 620 S.W.2d 116 (Tex.Crim.App.1981) (opinion on rehearing), where it was held that

> even if the objection was sufficient, the State had the right to inquire under the exception to the general rule about the arrest and conviction for possession of marihuana since the appellant had "opened the door" on direct examination.

*Id.* at 126.

It was established on direct examination that the defendant in *Bell* had nothing in his criminal past except one embezzlement conviction. The State was then permitted to show on cross-examination that the defendant had been arrested for two offenses of aggravated robbery, for possession of marihuana, and convicted of fleeing from a police officer. *Id.* at 124. No error was shown.

Rebuttal testimony of extraneous sexual offenses was held admissible in *Patton v. State,* 717 S.W.2d 772 (Tex.App.—Fort Worth 1986), *vacated on other grounds,* 761 S.W.2d 1 (Tex.Crim.App.1988). The court stated the purpose for allowing the rebuttal impeachment was to correct the false impression given the jury by the defendant that this was an isolated incident, and that he was such a close friend of the sexual abuse victim and his family he would never intentionally do anything to harm them or cause them trauma. *Patton,* 717 S.W.2d at 777. Rebuttal evidence showing other sex offenses

against that child, which impeached the defendant's testimony, was permitted. *Id.; accord, Wilson v. State,* 730 S.W.2d 438, 440–41 (Tex.App.—Fort Worth 1987, pet. ref'd).

In the present case, the rebuttal evidence of the former sexual abuse victims was correctly admitted to impeach the evidence of appellant that he had never sexually abused any child. Appellant "opened the door." No error is shown.

## ON APPELLANT'S MOTION FOR REHEARING EN BANC

BUTTS, Justice.

Appellant initially asserted six points of error appealing his conviction for indecency with a child. He now invites this court to reexamine its panel opinion for error in three particulars: the extraneous offenses question, the double jeopardy question, and the proof of venue question (sufficiency of the evidence). The earlier unchallenged portions of the panel opinion will continue while this en banc decision replaces the three challenged portions of the original opinion. The motion for rehearing is overruled.

### Venue

■ We first address the venue point. Appellant maintains the original opinion of the court summarily disposed of the question of sufficiency of the evidence based on failure of the State to prove venue beyond a reasonable doubt. While it is correct that venue must be proved by the State, the burden is by a preponderance of the evidence, not beyond a reasonable doubt. TEX.CODE CRIM. PROC.ANN. art. 13.17 (Vernon 1977). "Venue is not a 'criminative fact' and thus, not a constituent element of the offense." *Fairfield v. State,* 610 S.W.2d 771, 779 (Tex.Crim. App.1981).

■ Improper venue, not being a jurisdictional flaw, may be waived by the defendant's failure to raise it as an issue at trial. *Fairfield v. State,* 610 S.W.2d at 779. The appellate court will presume that venue was established absent appropriate presentation by the defendant of such issue below. *Id.* Therefore, any appellate error based on lack

of proof of venue was waived in this case since that issue was not raised at trial below.

■ However, this is not to suggest that venue was not established at trial. We recognized in the original opinion that venue may be established by either direct or circumstantial evidence. *See Black v. State,* *645 S.W.2d 789, 790* (Tex.Crim.App.1983). The complainant-child testified that the offense occurred in her home in Floresville, and the Department of Human Services worker further testified that appellant and complainant lived in a trailer located at 501 Goliad Road, Wilson County, Texas. Even if the issue had been raised, the proof of venue would be sufficient. The point was properly overruled.

### Double Jeopardy

Appellant's first trial ended in a mistrial. Before the present trial began, the trial court overruled a motion to dismiss the indictment for prior jeopardy and overruled appellant's special plea of jeopardy under TEX.CODE CRIM.PROC.ANN. art. 27.05 (Vernon 1989).

Appellant contends on rehearing that this court erred by not deciding the double jeopardy question on independent state constitutional grounds. *See* TEX. CONST. art. I, § 14. The double jeopardy protections found in the Fifth Amendment of the United States Constitution are mirrored in the Texas Constitution.[1] Appellant based his double jeopardy claim on both the state and federal provisions:

> [Appellant] moves the Court to dismiss with prejudice these Indictments on the basis that the Defendant has formerly been placed in jeopardy for the same offense, arising out of the same transaction, and that the second trial of this cause under the same Indictments violates the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 5 (sic) of the Texas Constitution. . . .

This court will therefore look to cases which reflect application of both the state and federal constitutional provisions. The record shows the first trial began in June, 1989. During testimony of complainant, who was the State's first witness, appellant requested a mistrial, and the court granted it.

The 10–year–old complainant testified that she left two notes in the school counselor's mail box at her Floresville elementary school. She wrote the notes without indicating what she wished to discuss with the counselor. She said that when the counselor met with her, the complainant told the counselor of past and continuing sexual abuse by appellant. There was no objection.

The complainant continued her testimony, stating that the abuse began about four or five years before. Appellant objected then. Defense counsel argued that pretrial discovery materials given to appellant as ordered by the court did not include mention of past and ongoing sexual abuse or the fact that the two notes to the counselor existed. Arguing surprise and prejudice, appellant moved for a mistrial.

The State responded that appellant had been given a doctor's report, a videotape interview of the child, and a report from the Department of Human Services, all of them indicating more than one alleged sexual abuse had occurred in the past and was ongoing rather than an isolated event. The State also argued that the two notes were mere requests for an appointment with the school counselor but contained no mention of the subject to be discussed. The State further argued that the same information regarding ongoing abuse had been discussed in voir dire and also that the complainant had already testified that the abuses happened in the past and were ongoing, and appellant had not objected. The trial court granted a mistrial but did not declare the reason.

Before the present trial began the court conducted a hearing on appellant's motion to dismiss and the special plea. Appellant maintained that the State wrongfully withheld the two notes (called "two written statements") of the complainant. The prosecutor

---

1. This court dismissed appellant's habeas corpus action filed in 1989 with the ruling that this court did not have jurisdiction. That action is separate and unrelated to the special plea of double jeopardy in this appeal.

stated she never knew about the notes and since finding out she had attempted to obtain them, but the counselor was unable to find them in the school files. She stated if they had been available, the State would have disclosed them to appellant.

Appellant continued to urge he was not aware of the past and ongoing nature of the alleged abusive acts, and the State had failed to disclose that. Assertions of these two discovery omissions by the State (failure to disclose the two notes and the past and ongoing nature of the sexual abuse charges) form the basis of appellant's double jeopardy claim. Appellant contends mistrial resulted from intentional prosecutorial misconduct or overreaching.

■ The general rule is that when the defendant moves for mistrial, a double jeopardy claim will not bar retrial. In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Supreme Court determined that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." 456 U.S. at 676, 102 S.Ct. at 2089. The court referred to this as a "narrow exception" to the general rule. The narrow exception of *Oregon v. Kennedy* applies where prosecutorial overreaching or misconduct results in the granting of a mistrial on the defendant's own motion. Without demonstration of that element, a double jeopardy plea will not bar a second trial. Texas cases interpreting article I, section 14 of the Texas Constitution are consistent with *Oregon v. Kennedy. See Demouchete v. State,* 734 S.W.2d 144, 146 (Tex. App.—Houston [1st Dist.] 1987, no pet.).

Thus, even if a defendant succeeds in aborting a trial by his motion for mistrial, he must still meet his burden of bringing forth evidence at the hearing on his special plea to demonstrate that the intentional misconduct of the prosecutor provoked him into moving for mistrial. In other words, the motive for the "goading" is the prosecution's desire for a more favorable climate and opportunity to convict, and the defendant would not move

for a mistrial and lose the present jury unless the prosecution forced his action.

■ The controlling question is whether the prosecutor in the present case intentionally acted to force a mistrial—to "goad" appellant into moving for a mistrial. The trial court conducted a hearing before the second trial and pointedly asked appellant to present evidence to support his contention that the mistrial was provoked by the intentional misconduct of the prosecutor. The record reflects appellant did not present that evidence. On the other hand, the State showed that it had provided appellant with a letter from the same school counselor indicating the reported proscribed conduct, and also that it had given him a doctor's report and the child abuse/neglect investigation report of the Texas Department of Human Services in which the worker Norma Reyes wrote, "This has been happening for approximately one to two years, possibly longer ... [complainant] approximates she was about 6 years of age...." The documents also contained statements of explicit sexual conduct occurring "at times," negating the theory of a one-time occurrence. At the conclusion of the hearing the trial court overruled the motion to dismiss and the special plea of double jeopardy. The issue was not submitted to the jury.

■ In *Chvojka v. State,* 582 S.W.2d 828 (Tex.Crim.App.1979), the court of criminal appeals stated:

Different considerations obtain, however, when the mistrial has been declared at the defendant's request. Where the circumstances which occasion a mistrial are not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial ordinarily is assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. [Citations omitted.] Prosecutorial overreaching will be found where the government, through "gross negligence or intentional misconduct," caused aggravated circumstances to develop which "seriously prejudice[d] a defendant," causing him to "reasonably conclude that a continuation of the tainted proceedings would result in a conviction."

*United States v. Dinitz,* [424 U.S. 600, 608, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267 (1976) ].

*Chvojka v. State,* 582 S.W.2d at 830–31. Since a plea of former jeopardy constitutes nothing more than a pleading and does not establish the truth of the issues of fact alleged therein, the burden is on the defendant to go forth at his second trial with evidence in support of his allegation of former jeopardy. *Anderson v. State,* 635 S.W.2d 722, 725 (Tex.Crim.App.1982).

In *Anderson* the court of criminal appeals held that while the mistrial did result from prosecutorial error, evidence at the double jeopardy hearing negated allegations of prosecutorial overreaching by means of intentional misconduct. *Id.* at 726. The evidence in *Anderson* failed to show that the prosecutor goaded the accused into moving for mistrial because of a fear that the jury might acquit the accused or the State might gain some advantage in a new trial.

In the present case the record is devoid of evidence that the prosecutor was guilty of any conduct which could be characterized as prosecutorial overreaching or intentional misconduct. In fact, in light of the evidence at the hearing, we cannot say that even ordinary prosecutorial error in the discovery process was shown. The allegations of prosecutorial overreaching or intentional misconduct were rejected by the trial court after it heard the evidence, which, we agree, clearly negated those allegations.

The trial court answered the ultimate issue, whether the prosecutor *intended to provoke* the accused into requesting the mistrial by not giving appellant the two notes, then unknown to the prosecutor, which contained only the child's name, class, and free period for the counselor's interview, and by not informing appellant there would be testimony that the alleged sexual acts had been occurring in past years as well as presently, where it was undisputed that appellant had received the noted reports referring to ongoing sexual activities as well as the videotape. The court did not err in overruling the motion to dismiss the indictment and the plea in bar of prosecution asserting violation of the federal and state double jeopardy clauses. The second point was properly overruled.

## Extraneous Offenses

■■■ Appellant complains about the admission of testimony of his earlier sexual assaults against other children, clearly extraneous offenses. The three witnesses who testified to the extraneous offenses allegedly committed against them by appellant when they were children were appellant's daughter and two nieces. We hold the trial court did not err in admitting the rebuttal impeaching evidence.

Since long before the passage of the Texas rules of criminal evidence in 1986, *see* TEX. R.CRIM.EVID. 402, 403, and 608, which sometime work to preclude admission of evidence of extraneous offenses, trial courts have allowed otherwise inadmissible evidence when "the door is opened" by direct defense testimony or when the evidence is admissible to rebut a defensive theory. This is still viable law.

■■■ Appellant testified and specifically denied committing the charged offense or that he would sexually abuse a child. Both his parents testified and denied that he would ever sexually abuse children. The direct defense evidence purports to show that he never had engaged in, nor would he ever engage in this kind of proscribed act (sexual abuse of children). These broad assertions exposed appellant to rebuttal proof of similar acts against other children. *See Mares v. State,* 758 S.W.2d 932, 936 (Tex.App.—El Paso 1988, pet. ref'd). Where a false picture is presented by the defense, the prosecution may impeach the defense witnesses' testimony by introduction of extraneous offenses. *See McIlveen v. State,* 559 S.W.2d 815, 822 (Tex.Crim.App.1977). Further, when the door is opened on direct examination by the defense, the prosecution has the right to inquire, under the exception to the general rule excluding extraneous offense evidence, about relevant extraneous offenses. *See Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App. 1981) (opinion on motion for rehearing).

A psychologist testified for the defense, detailing her interview with appellant. She

stated the interview revealed that he was emotionally mature and had a satisfying adult sex life. She confirmed that she believed what he told her in her discussion with him and that her psychological testing of him reflected that he did not display the lifestyle patterns usually present in child abusers. On cross-examination the prosecutor questioned the doctor about the interview. The psychologist then quoted appellant's absolute denial to her that he was a pedophile: "He says he is not. He says he has never sexually molested anyone." She indicated that he did not fit the profile of an accused sexual abuser because he did not have the characteristics. Further, the doctor testified on direct examination there was "the dynamic possibility of false allegations" by the child. It was her conclusion that the child was not telling the truth about the allegations and was engaging in retaliation against appellant.

Rebuttal testimony of extraneous sexual offenses was held admissible in *Patton v. State*, 717 S.W.2d 772 (Tex.App.—Fort Worth 1986), *vacated on other grounds*, 761 S.W.2d 1 (Tex.Crim.App.1988). The court stated the purpose for allowing the rebuttal impeachment was to correct the false impression given the jury by the defendant that this was an isolated incident, and that he was such a close friend of the sexual abuse victim and his family he would never intentionally do anything to harm them or cause them trauma. Admission of other sex offenses impeaching the defendant's testimony was permitted. *Patton v. State*, 717 S.W.2d at 777. *Accord, Wilson v. State*, 730 S.W.2d 438, 440–41 (Tex.App.—Fort Worth 1987, pet. ref'd). *See Ballard v. State*, 464 S.W.2d 861 (Tex.Crim.App.1971) (extraneous sex offenses admissible to rebut defendant's assertion that he did not "mess around with little children.")

In the present case appellant also vigorously maintained he was the victim of a conspiracy engineered by the complainant and her mother, who were pictured as degenerates. Appellant presented evidence that the prosecution instigated by complainant and her mother, who had divorced him, was a "frame-up." An accused's claim that he was framed is a recognized defensive theory which may be rebutted by evidence of similar extraneous acts. *Boutwell v. State*, 719 S.W.2d 164, 179 (Tex.Crim.App.1986) (opinion on motion for rehearing). Under the circumstances in this case similar extraneous acts were admissible as tending to rebut appellant's defensive theory and claim of a frame up. *See Vandefifer v. State*, 682 S.W.2d 605, 607 (Tex.App.—Texarkana 1984, no pet.).

Other defense theories were presented that complainant was jealous of her baby sister and her mother and this was the means to get rid of appellant, that she was an habitual liar, that a lesbian relationship existed between her and her mother which was witnessed by appellant, that complainant had an unnatural and overtly displayed interest in sex, and that complainant was striking back at appellant because he was a strict disciplinarian.

We hold the court did not err in admitting evidence of the strikingly similar extraneous sexual offenses.

No error is shown. The motion for rehearing is overruled.

